Coös,
June 28, 1919.

### MECHANICS SAVINGS BANK *v.* J. JAMES FEENEY.

In an action upon negotiable paper, when it is shown that the title of any person who has negotiated the paper was defective, the burden is on the holder to prove that he or some person under whom he claims acquired title as holder in due course.

The facts that a bank purchased paper at ten per cent discount, that it paid in part therefor by its own paper maturing thereafter, and that its cashier failed to testify that when the discount was made he took the paper in the usual course of business believing it to be free from infirmity may warrant the finding that the bank was not a *bona fide* holder.

ASSUMPSIT, upon four promissory notes for $225 each, dated July 2, 1917, signed by the defendant, payable to the order of the Partin Manufacturing Company three, four, five and six months from date, and indorsed to the plaintiff before maturity.

The company conducted a sales promotion business, furnishing prizes to be offered by retailers. The notes were given in payment for a contract of this nature. The plaintiff was induced to enter into the contract by means of forged letters of recommendation of the company.

The plaintiff's cashier testified that he first did business with the company June 6, 1917, when Mr. G. H. Partin was introduced to him. Partin brought letters of recommendation from other banks and the plaintiff bought of the company some four or five thousand dollars of notes, at a discount of ten per cent. On July 26, the plaintiff bought sixty-one hundred dollars of paper from the company, paying therefor $1450 in cash and its certificate of deposit for $4040, payable one year from date. This purchase included the notes in suit. Before making this purchase the plaintiff looked up the defendant's standing and found that he was financially responsible.

In the latter part of that year the government began an investigation of the company's use of the mails, and the company went into bankruptcy.

At the close of the evidence the plaintiff's motion for a directed verdict was granted, subject to exception, by *Marble,* J., who transferred the case from the December term, 1918, of the superior court.

*Goss & James (Mr. James* orally), for the plaintiff.

*Ovide J. Coulombe,* and *Drew, Shurtleff, Morris & Oakes (Mr. Coulombe* orally), for the defendant.

PEASLEE, J. The law governing this case is stated in *Hallock* v. *Young,* 72 N. H. 416. There being evidence for the consideration of the jury that the notes sued upon were obtained by fraud, it was incumbent upon the plaintiff to show that it was a *bona fide* holder for value. Upon this issue it had the burden of proof, and if upon the evidence a reasonable man might think its good faith in making the purchase was not shown, the defendant was entitled to have that issue submitted to the jury. The negotiable instrument act makes no change in this respect. Laws 1909, *c.* 123, *ss.* 52, 59.

The evidence relating to the purchase of the notes consists of the testimony of the plaintiff's cashier. The transaction as stated by him could well be found to be one entered into out of the usual course of banking business, and not in good faith. It bought paper which it now claims it knew was executed by a responsible maker, and on which it secured what it claims it believed to be a responsible indorser, for ninety cents on the dollar. It did not give cash or credit for it, in the main, but issued therefor its own negotiable security payable long after the notes fell due. It would be natural for a banker to inquire why its customer was discounting paper in this way, losing ten per cent and taking in exchange other paper maturing at a later date. The object could not have been to convert the paper into available capital, for the transaction postponed that event. It was not to relieve the payee of the chance of insolvency of the maker, for the payee bound itself as indorser. The only apparent object was to get the paper into the hands of one against whom the defence of fraud in its inception would not be available. If it is conceivable that a banker might make such a discount without thinking of this, it is certainly not inconceivable that he probably would think of it and would understand what was behind the

transaction. If the jury so found they would also find that *bona fides* was wanting. *Hallock* v. *Young, supra.*

Another fact which might be considered as significant is that the cashier did not testify that when the discount was made he believed the paper to be free from infirmity. The jury might find that everything he testified to was true and also find against the plaintiff upon the vital fact to which he did not testify. It could be found that he bought the paper exactly as represented, yet well understanding that the payee's object in selling at a large discount was to cut off defences. No proof of good faith was offered, except by way of inference; and where inferences are to be drawn the case is for the jury. *Burnham* v. *Railroad*, 69 N. H. 280, 283. Especially is this true when, as in this case, direct evidence upon the question was available and was not put in by the party who seeks to have the inference drawn. The cashier was a competent witness upon the question of his innocence in taking the paper (*Janvrin* v. *Fogg*, 49 N. H. 340, 353) and his failure to testify to it was sufficient to warrant a finding of bad faith. It is also significant that he did not testify that the transaction was in the usual course of business.

The case should have been submitted to the jury.

*Exception sustained.*

All concurred.