HOWARD NATIONAL BANK *v.* GRAHAM WILSON AND TRUSTEE.

January Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 2, 1923.

*Pleading—Practice Act—Affirmative Defenses—Issues in Pleadings Enlarged by Counsel—Bills and Notes—Negotiable Instruments Act—Payee May Be "Holder in Due Course" —"Negotiated"—Manner of Negotiation—"Immediate Party" Under G. L. 2886—When Accommodation Party Liable Notwithstanding His Status Known to Payee—Presumption that Holder Is Such in Due Course—Burden of Proof Where Defense Is Fraud—Where Some Evidence of Fraud, What Holder Must Show—Effect of Plaintiff's Knowledge of Suspicious Circumstances—When Necessary for Holder to Show Circumstances of Taking—Good or Bad Faith Generally Jury Question—When Question for the Court—Proof of Bad Faith—Directed Verdict.*

1. Under the Practice Act, all matters relied upon as an affirmative defense should be specially pleaded, when the statute does not provide otherwise.

2. While as a general rule cases are tried in court upon the issues made by the pleadings, counsel may, by conduct or agreement, limit or enlarge the issues, and the course of the trial may be such as to constitute a waiver of any question respecting the

sufficiency of the pleadings to make available a defense not properly pleaded.

3. In an action on a note, where the defendant, under the general denial, introduced evidence, without objection by the plaintiff that it was outside the issues made by the pleadings, tending to show fraud in the procuring of the note, the issues were thereby enlarged, and the case should be treated as though the necessary pleadings had been filed.

4. Under the Negotiable Instruments Act, the payee of a negotiable instrument may become a "holder in due course," as defined in Section 52 of such Act (G. L. 2921), and be entitled to the protection which the Act affords such a holder.

5. "Negotiated" as used in Section 52, sub-division 4, of the Negotiable Instruments Act means "concluded by bargain or agreement," hence a promissory note, complete as to form and payable to a named person, may be negotiated to that person by being sold to him or taken by him for value.

6. The provision in the Negotiable Instruments Act, § 30 (G. L. 2900), that an instrument payable to bearer is negotiated by delivery, and, if payable to order, by the indorsement of the holder and delivery, was not intended to include all the ways in which an instrument might be negotiated, nor to restrict the comprehensive terms of the preceding sentence in such section, that an instrument is negotiated when it is transferred from one person to another so as to constitute the transferee a holder thereof.

7. Where a note, complete and regular on its face, payable to the plaintiff bank, was procured from the maker by one who was then the acting president and managing director of the bank, but the note was obtained solely for his personal accommodation and not as a representative of the bank, and such person then delivered the note to the bank, obtaining therefor its cashier's check drawn to the bank and indorsed by it in blank for the amount of the note, the bank was not an "immediate party" to the signing of the note within Section 16 of the Negotiable Instruments Act (G. L. 2886), relating to delivery between immediate parties, for while the payee of a note is in proximity to the maker he may or may not be in privity with him, and "immediate" means privity, not proximity.

8. Under the Negotiable Instruments Act, § 29 (G. L. 2899), an accommodation party is liable on a negotiable instrument to a holder for value, notwithstanding the payee has notice that the note was given for the accommodation of another.

9. The provision in the Negotiable Instruments Act, § 59 (G. L. 2928), that every holder is deemed *prima facie* a holder in due course does not change the common law rule respecting the burden of proof where fraud in the inception of the instrument is shown, but is merely declaratory of the common law.

10. In an action on a note, where the defense is fraud in its inception, under the Negotiable Instruments Act, § 59 (G. L. 2928), the holder is presumed to be a holder in due course until the defendant adduces evidence in support of such claimed fraud sufficient for the consideration of the jury, after which the burden is upon the plaintiff of proving the conditions establishing his character as holder in due course within Section 52 of such Act.

11. To sustain the burden of proof under such circumstance, the holder need not show that he exercised the prudence and caution of a prudent and careful man in taking the instrument, but it is sufficient to show actual good faith on his part.

12. On the question of what amounts to bad faith under the provisions of the Negotiable Instruments Act, negligence on the part of the plaintiff, or suspicious circumstances sufficient to put a prudent man on inquiry will not of themselves prevent a recovery, but are to be considered merely as evidence bearing on the question.

13. In an action on a negotiable instrument, when the case has taken such shape that the plaintiff is called upon to prove himself a holder in due course to be entitled to recover, including good faith in taking the instrument, it devolves upon him to disclose the facts and circumstances attending the transfer from which good or bad faith may be inferred.

14. The question of good or bad faith in becoming the holder of a negotiable instrument is generally, but not always, one of fact for the jury.

15. In an action on a negotiable instrument, where the evidence of the plaintiff's good faith is undisputed and not only consistent therewith but so conclusive that fair-minded men could draw

no different inference, it is the duty of the court to decide the question as a matter of law and instruct the jury accordingly.

16. Under the Negotiable Instruments Act, to show bad faith in the taking of a note by the holder, his knowledge of the exact fraud practiced need not be established, but it is sufficient to show that at the time of the taking he had knowledge of facts tending to show that there was something wrong with the transaction, although nothing short thereof would be sufficient.

17. In an action on a note, payable to plaintiff bank but made for the accommodation of one who procured it by fraud, *held* that under the circumstances disclosed by the evidence the plaintiff took the note in good faith as a matter of law, and that a verdict was properly directed for the plaintiff.

ACTION OF CONTRACT on a promissory note. Plea, the general issue. Trial by jury at the March Term, 1922, Chittenden County, *Willcox*, J., presiding. Verdict directed by the court for the plaintiff, and judgment thereon. The defendant excepted. The opinion states the case. *Affirmed and remanded.*

*V. A. Bullard, C. F. Black,* and *C. P. Cowles* for the defendant.

The payee of a negotiable instrument is not a holder in due course under the Uniform Negotiable Instruments Act. *Vander Ploeg* v. *Van Zuuck,* 135 Iowa 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490, 124 A. S. R. 275; *Builders Lime. Co.* v. *Weimer,* 170 Iowa 444, 151 N. W. 100; *St. Albans Savings Bank* v. *Edwards,* 243 Mo. 553, 147 S. W. 978; *Long* v. *Mason,* 200 S. W. 1062 (Mo.); *Bowles* v. *Clark,* 59 Wash. 336, 109 Pac. 812, 31 L. R. A. (N. S.) 613; *Kentucky Realty Co.* v. *Bank,* 178 Ky. 80, 198 S. W. 543; *Gresham Bank* v. *Walsh,* 147 Pac. 534 (Or.); *Simpson* v. *Bank,* 185 Pac. 913, (Or.); 8 C. J. 469-470.

*Alfred L. Sherman* and *Warren R. Austin* for the plaintiff.

The payee of a negotiable instrument may be a holder in due course. *Liberty Trust Co.* v. *Tilton,* L. R. A. 1915B, 147; *Thorpe* v. *White,* 188 Mass. 333, 74 N. E. 592; *National Investment & Security Co.* v. *Corey,* 222 Mass. 453; *Ex parte Gold-*

*berg*, 67 So. 839; 8 C. J. 469; *Brown* v. *Rowen*, 154 N. Y. S. 1098; *Kentchel Furniture Co.* v. *Ideal House Furnishers*, 19 Man. 652; *McDonough* v. *Cook*, 19 Ont. L. 267; *Lilly* v. *Farrar*, 17 Que. K. B. 554.

To defeat recovery of a holder for value, actual knowledge of the fraud claimed or of bad faith by the plaintiff, must be shown. *Passumpsic Bank* v. *Goss and Page*, 31 Vt. 315; *Dixon* v. *Dixon*, 31 Vt. 450; *Farmers & Mechanics Bank* v. *Humphrey et al.*, 36 Vt. 554; *Peoples Bank of Minneapolis* v. *Reed*, 120 Pac. 339; *Citizens Trust & Savings Bank* v. *Stackhouse*, 91 S. C. 455, 40 L. R. A. (N. S.) 454; *Security Trust et al.* v. *Gleichmann*, 150 Pac. 908, L. R. A. 1915F, 1203; *Custard* v. *Hodges*, 155 Mich. 361; *Receiver* v. *Letts*, 143 Mo. App. 196; 3 R. C. L .1074-1075; *Craig* v. *Hobbs*, 44 Ind. 363; *Wright* v. *Flynn*, 33 Iowa 159; *Clothier* v. *Adriance*, 51 N. Y. 322; *McWilliams* v. *Mason*, 31 N. Y. 294; *Humphrey* v. *Clark*, 27 Conn. 381; *Kingsland* v. *Pryor*, 33 Ohio St. 19; *Lancaster County National Bank* v. *Garber*, 178 Pa. 91; *Riley* v. *Reifert* (Tex. Civ. App.), 32 S. W. 185; *Selser* v. *Brock*, 3 Ohio St. 302; *Putnam* v. *Sullivan*, 4 Mass. 45, 3 A. D. 206.

That a note was given for accommodation is no defense against a holder in due course. *Rutland Provision Co.* v. *Hall*, 71 Vt. 208; *Farmers & Mechanics Bank* v. *Rathbone*, 26 Vt. 19.

Fraud practised, not to carry out the instructions of the master, express or implied, but to effect a purpose of the servant alone, cannot be imputed to the master. *Ploof* v. *Putnam*, 83 Vt. 255; *Moore* v. *G. T. Ry. Co.*, 93 Vt. 389; *Greenough* v. *U. S. Life Ins. Co.*, 96 Vt. 47, 116 Atl. 332. 4 Thomp. Com. on Corporations, 5204-5208; *Bank* v. *Gifford*, 47 Iowa 575; *Bank* v. *Christopher*, 40 N. J. Law 435; *Lyndon Mill Co.* v. *Lyndon L. & B. Inst.*, 63 Vt. 581; *Brandon Bank* v. *Brigg's Assignees*, 70 Vt. 595; *State Bank* v. *Forsyth* (Mont.), 28 L. R. A. (N. S.) 501.

TAYLOR, J. This is an action of contract on a promissory note signed by the defendant Graham Wilson and payable to the order of the plaintiff. The answer was a general denial. The trial was by jury, and, at the close of the evidence, a verdict was directed for the plaintiff. The case is here on the defendant's exceptions to the direction of a verdict and to the judgment

thereon.   Other exceptions saved at the trial are not briefed and so are waived.

[1-3]   The note in suit was executed and delivered to the plaintiff September 19, 1919, and was payable on demand with interest.   Interest was indorsed thereon to January 1, 1920. The plaintiff introduced the note in evidence, proved defendant Wilson's signature thereto, the issue to him of a cashier's check for the amount of the note, the subsequent payment of the check when presented therefor, and the amount due on the note to the time of trial.   With this the plaintiff rested.   The defense relied upon was that the note was given solely for the accommodation of one Frank W. Elliott, the then acting president and managing director of the plaintiff bank, that the note was procured by Elliott through fraud, and that the note went to the benefit of the plaintiff, as its proceeds were used to cover Elliott's overdrafts at the bank.   Evidence offered by the defendant in support of his claims was not objected to as being outside the issues made by the pleadings.   The course of the trial indicates that the defense was supposed to be available under the general denial, as it doubtless would have been under the general issue prior to the adoption of the Practice Act (G. L. 1789 et seq.). See *Limerick Bank* v. *Adams*, 70 Vt. 132, 40 Atl. 166.   It is now necessary that all matters relied upon as an affirmative defense should be specially pleaded, when the statute does not provide otherwise.   *Dernier* v. *Rutland Ry., etc., Co.*, 94 Vt. 187, 110 Atl. 4; *Burlington Grocery Co.* v. *Lines*, 96 Vt. 405, 120 Atl. 169; *McAllister* v. *Benjamin*, 96 Vt. 475, 121 Atl. 263.   As a general rule cases are tried in court upon the issues made by the pleadings.   But counsel may, by conduct or agreement, limit or enlarge the issues.   *Dernier* v. *Rutland Ry., etc., Co., supra;* *Brown* v. *Aitken*, 90 Vt. 569, 99 Atl. 265; *Probate Court* v. *Enright*, 79 Vt. 416, 65 Atl. 530; *Poole* v. *Mass. Mut. Acc. Assn.*, 75 Vt. 85, 53 Atl. 331.   So it is held that the course of the trial may be such as to constitute a waiver of any question respecting the sufficiency of the pleadings to make available a defense not properly pleaded.   *Bradley* v. *Blandin*, 91 Vt. 472, 475, 100 Atl. 920.   It should be held in the circumstances attending the trial that the case at bar is within the exception to the general rule, and should be treated as though the necessary pleadings had been

filed.    Though the point is not raised, we have thought best to advert to it to avoid misunderstanding.

The defendant's evidence tended to show the following facts:  During all the time material Elliott was acting president of the bank and had general oversight and management of its affairs.   He was also interested in a lumber business conducted as the W. E. Elliott Lumber Company and acted as its treasurer. He had two check accounts with the plaintiff bank, one his personal account and the other an account as treasurer of the Lumber Company.   He also had a check account of the Lumber Company with the Waterbury Savings Bank and Trust Company of Waterbury, Vermont, hereinafter referred to as the Waterbury Bank.   From July 6, 1919, to September 18, 1919, his personal account with the plaintiff was overdrawn in increasing amounts, until on the latter date the overdraft as shown by the books of the bank amounted to $14,594.14.   On the matter being brought to the attention of some of the other directors, they called on Elliott to take care of the overdraft.   An arrangement was entered into by which the plaintiff made a loan to the Lumber Company which was deposited in its account with the plaintiff, and Elliott transferred $14,750 from this to his personal account, leaving a balance to his credit of $155.86.   On September 15, Elliott had drawn a check on his personal account for $10,000 which had not been returned to the bank when this adjustment was made.   To cover this check when returned, he drew a check to himself on the Waterbury Bank for a like amount, which he deposited in his personal account.   This overdrew the Lumber Company's account at the Waterbury Bank about $8,700.   There was no evidence that any one other than Elliott knew of this situation at the time the note in question was given.   In fact, the contrary fairly appeared so far as any representative of the bank was concerned.   On the day the note was given, the defendant called at the plaintiff bank on business which was transacted with Elliott in the directors' room.   In the course of the interview Elliott procured the defendant to sign the note for his (Elliott's) accommodation.   It is unnecessary to detail the representations made to induce the defendant to sign the note.   No question is made but that they were false and fraudulent.   The note was executed, and Elliott took it out into the bank and directed the assistant cashier to make a cashier's check in favor of

the defendant for the amount of the note, which was done. Elliott returned with the check which the defendant indorsed in blank and delivered to Elliott. The latter deposited the check to the credit of the Lumber Company in the Waterbury Bank on September 20. The movement of these checks was so timed that want of funds did not appear on the books of either bank. Elliott paid the interest on the note indorsed January 1, 1920. He died in the latter part of January, 1920, when for the first time, so far as appeared, it was discovered that he was insolvent.

[4-5]   The defendant relies upon the claim that the evidence made a question for the jury whether the plaintiff took the note subject to the defenses of fraud and failure of consideration. It is insisted that the plaintiff, being the payee of the note, is not a holder in due course as a matter of law; and that, in any event, in the circumstances of the case, this was a question of fact. As we shall see, this position is neither wholly right nor wholly wrong. Section 52 of the Uniform Negotiable Instruments Act (G. L. 2921), defines "a holder in due course" as a holder who has taken the instrument under the following conditions:

(1)   That it is complete and regular upon its face; (2) that he became a holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that, at the time it was negotiated to him, he did not have notice of any infirmity in the instrument or defect in the title of the person negotiating it.

It is at once apparent that the delivery of the note to the plaintiff made it a "holder" thereof in contemplation of the Negotiable Instruments Act. It is insisted, however, that the payee of a negotiable instrument is not "a holder in due course" under the Act and certain decisions in other states are relied upon in support of the claim, of which *Vander Ploeg* v. *Van Zuuk*, 135 Iowa 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490, 124 A. S. R. 275, is perhaps the leading case. The theory of these decisions is that, under the Uniform Negotiable Instruments Act, a holder in due course is a person to whom after completion and delivery an instrument has been "negotiated"—one who has taken by negotiation and not as an original party. "Negotiated" is construed as meaning "transferred from one holder to an-

other." *Vander Ploeg* v. *Van Zuuk*, decided in 1907, followed the decision of the court of the King's Bench in *Herdman* v. *Wheeler*, 1 K. B. 361, which was practically overruled by the later English case of *Lloyd's Bank* v. *Cooke* (1907), 1 K. B. 794. It is frequently cited to the general proposition that the protection accorded a holder in due course does not extend to the payee of a negotiable instrument. However, in deciding the question presented the court said: "We do not mean to say that in no case can the person named as payee in a negotiable instrument be the holder thereof in due course," assuming by way of illustration a case very similar to the case at bar. The court was dealing with a question arising under Section 14 of the Act relating to the filling of blanks. The defendants affixed their signatures to a blank note at the request of Pothoven, who was a partner of one of them in a mercantile business, on the representation that he might, within a short time, find it necessary to raise $150 or $200 for temporary use in business. Pothoven being indebted individually to plaintiff on a note for about $2,000, without authority inserted plaintiff's name as payee, and $2,000 as the amount to be paid, and delivered the note to the plaintiff, who surrendered the past-due obligation. The question was whether the provision of Section 14 respecting the filling of blanks "strictly in accordance with authority given," or the provision respecting an instrument "negotiated to a holder in due course," controlled the case. It was held that the plaintiff was not a holder in due course within the meaning of that section of the act. The case is supported by decisions in Missouri, South Dakota, Oregon, and Washington; but the weight of authority is against the decision, at least so far as it may be considered as deciding that the term "negotiated," as used in the Act, does not include a transfer to the payee of a negotiable instrument. Among the cases holding that a payee may become a holder in due course within the protection of the Negotiable Instruments Act are *Ex parte Goldberg & Lewis*, 191 Ala. 356, 67 So. 839, L. R. A. 1915F, 1157; *Baggish* v. *Offengand*, 97 Conn. 312, 116 Atl. 614; *Liberty Trust Co.* v. *Tilton*, 217 Mass. 462, 105 N. E. 605; *Colonial Fur Ranching Co.* v. *First Nat. Bk.*, 227 Mass. 12, 116 N. E. 731; *Drumm Const. Co.* v. *Forbes*, 305 Ill. 303, 137 N. E. 225; *Johnston* v. *Knipe*, 260 Pa. 504, 105 Atl. 705, L. R. A. 1918E, 1042; *Bergstrom* v. *Ritz-Carleton, etc., Co.*,

171 App. Div. 776, 157 N. Y. S. 959, 220 N. Y. 569, 115 N. E. 1033; *Brown* v. *Rowman,* 91 Misc. Rep. 220, 154 N. Y. S. 1098; *Redfield* v. *Wells,* 31 Idaho 415, 173 Pac. 640; *Bank* v. *Randall* (Neb.), 186 N. W. 70, 21 A. L. R. 1360; *Bank* v. *Smith,* 59 Mont. 280, 196 Pac. 523, 15 A. L. R. 430; *Fox* v. *Cortner,* 145 Tenn. 482, 239 S. W. 1069, 22 A. L. R. 1341.

The trend of judicial decision is thus clearly indicated and would seem to promise most in favor in uniformity. But this consideration aside, we think the fair construction of the whole Act leads to no other conclusion. That a payee is capable of being a holder in due course at common law has been held almost without dissent. This is the well recognized doctrine of our own cases. *Passumpsic Bank* v. *Goss,* 31 Vt. 315; *Dixon* v. *Dixon,* 31 Vt. 450, 76 A. D. 128; *Farmers & Mechanics Bk.* v. *Humphrey,* 36 Vt. 554, 558, 86 A. D. 671; *Quinn* v. *Hard,* 43 Vt. 376, 5 A. R. 284. The cardinal purpose of the principles developed in the law merchant has been the protection of a *bona fide* holder for value who has acquired a negotiable instrument in the due course of trade or business. Commercial paper serves as common currency. Its unhampered use is indispensable to the business of the modern world. Any medium of exchange cannot have free currency without confidence; and experience has taught that it is dangerous to cast doubt even upon a payee's right to recover when he has taken commercial paper complete and regular on its face, honestly and for value. The codification of commercial law into a Uniform Negotiable Instruments Act has been accomplished, not for the purpose of changing any of its essential principles, certainly not for weakening or destroying the cardinal principle, but for the purpose of harmonizing certain minor differences existing in the various jurisdictions. *Ex parte Goldberg, supra.* The only provision of the Act even suggesting that it was intended to exclude a payee in every case from the status of a holder in due course is found in Section 52, subd. 4 (G. L. 2921); but such is not its necessary implication. The question turns on the meaning of "negotiated" as employed in this section. Its common legal significance is "concluded by bargain or agreement." So, a promissory note, complete as to form and payable to a named person may be negotiated to that person by being sold to him or taken by him for value. Such was the sense in which the term was used in the law merchant, and its

meaning has not been changed by the Negotiable Instruments Act. *Liberty Trust Co.* v. *Tilton, supra.*

[6]  This view is confirmed by the definition of "negotiation" found in Section 30 of the Act (G. L. 2900), which provides that an instrument is negotiated when it is transferred from one person to another in such a manner as to constitute the transferee the holder thereof.  As said in the case last cited, the remaining sentence of the section, "if payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery," was not intended to include all the ways in which an instrument might be negotiated, nor to restrict the comprehensive terms of the preceding sentence.  The subject in all its phases is exhaustively treated by Mr. Brannan in his work on Negotiable Instruments Law, third edition, where the cases then available are reviewed. Among other things he says: "If a payee cannot be a holder in due course, the universal mercantile custom and the overwhelming weight of authority have been upset by the act and the *bona fide* payee of a bill of exchange remitted to him by a buyer of goods cannot recover against the drawer if the remitter has procured the bill from the drawer by fraud.  But no such construction of the act is warranted."  Brannan on Neg. Ins. Law (3rd ed.) 51.  See, also, pages 49-56, 162-176.  The opposing theories are discussed in an extended note to *Merchants Nat. Bk.* v. *Smith,* 15 A. L. R. 437-446.  See, also, note 21 A. L. R. 1365. We hold that the plaintiff may be entitled to the protection afforded a holder in due course under the Negotiable Instruments Act, regardless of the fact that its status is that of payee.

[7, 8]  Did the evidence make a jury question whether the plaintiff was a holder of the note in due course?  No question is made but that the note was complete and regular on its face, that the plaintiff became the holder before the note was overdue, and that the note was taken for value.  The only material conditions controverted relate to the circumstances of the taking—whether it was in good faith and without notice of any infirmity of the instrument.  Section 52 (G. L. 2921), subds. 3 and 4.  It is not claimed that Elliott represented the plaintiff in the negotiations leading up to the signing of the note, nor that his fraud was imputable to the plaintiff; and counsel in argument expressly disavowed any claim in the circumstances that the plaintiff had

constructive notice of the fraud through Elliott's knowledge thereof. The plaintiff was not an "immediate party" to the signing of the note in contemplation of Section 16 of the Act (G. L. 2886). The payee of a note is in proximity to the maker but he may or may not be in privity with, or immediate to the maker. Immediate means privity not proximity. Brannan on Neg. Ins. Law (3rd ed.) 163; *Liberty Trust Co.* v. *Tilton,* 217 Mass. 462, 464, 105 N. E. 605. It is said in *Miller* v. *Campbell,* 173 App. Div. 821, 160 N. Y. S. 834, that the payee named in a note may be so separated from the consideration thereof as to have the rights of a purchaser for value; and on the other hand a transferee may be so associated with the transaction in which the note was given as not to be within the intended protection of the Negotiable Instruments Law. The note was procured by Elliott for his personal accommodation, and was made payable to the plaintiff with a view to securing the loan from it, a stranger to the transaction. Notice of any infirmity in the instrument aside, it woud be quite immaterial that the plaintiff at the time of taking the note knew it was given for Elliott's accommodation, if such had been the fact. An accommodation party is liable on the instrument to a holder for value notwithstanding such notice. Section 29 (G. L. 2899).

We start with the presumption that the plaintiff is a holder in due course. Section 59 of the Act (G. L. 2928), provides: "Every holder is deemed *prima facie* a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course," etc. While the case does not come within the last provision of the rule, it helps to determine where the burden of proof is when fraud in procuring the execution of the instrument is relied upon as a defense, which is the important question in the case as presented on review. Other provisions affecting the question of burden of proof and what is necessary to be shown to qualify the holder of a negotiable instrument as a holder in due course are found in Sections 55 to 58 inclusive of the Act (G. L. 2924 to 2927). In the hands of any holder other than a holder in due course the instrument is subject to the same defenses as if it were non-negotiable. Section 58. A holder in due course holds the instrument free from any

defect of title of prior parties, and free from defenses available to prior parties among themselves. Section 57. The title of a person who negotiates an instrument is defective within the meaning of the Act when he obtained the instrument, or any signature thereto, by fraud, duress, or force or fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud. Section 55. The remaining section specifies what constitutes notice in contemplation of Section 52, subd. 4, of the Act. It provides, in substance, that, at the time the instrument was negotiated to him, the holder must have had "actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith." Section 56.

[9, 10] To avoid possible misunderstanding, it should be observed that the case does not involve the question of failure of consideration. Some courts make a distinction respecting the burden of proof between such a defense and one of fraud, holding that under Section 28 of the Act (G. L. 2898), the burden of proving failure of consideration is on the defendant. See *Title Guar. & Tr. Co.* v. *Pam,* 232 N. Y. 441, 134 N. E. 525; *Piner* v. *Brittain,* 165 N. C. 401, 81 S. E. 462; *McCormack* v. *Williams,* 88 N. J. Law 170, 95 Atl. 978, L. R. A. 1917E, 535; *Rhodes* v. *Guhman,* 156 Mo. App. 344, 137 S. W. 88; Brannan on Neg. Ins. Law, 114. We have occasion to consider only where the burden rests when the defense is fraud in the inception of the instrument. The provision of the Act, "every holder is deemed a holder in due course," does not change the common law rule respecting the burden of proof where such fraud is shown. The section of which it forms a part is merely declaratory of the common law. Brannan on Neg. Ins. Law, 211. This is so recognized in a long line of cases collected in a note found in 18 A. L. R. 26-29. Among the cases where it has been expressly stated are *Deshazo* v. *Lamar,* 17 Ala. App. 392, 85 So. 586; *Parsons* v. *Utica Cement Mfg. Co.,* 82 Conn. 333, 73 Atl. 785, 135 A. S. R. 278; *Campbell* v. *Fourth Nat. Bk.,* 137 Ky. 555, 126 S. W. 114; *Downs* v. *Horton* (Mo. App.), 209 S. W. 595; *Mechanics Sav. Bk.* v. *Feeney,* 79 N. H. 267, 108 Atl. 295. Unless and until the defendant adduced evidence in support of the defense of fraud, the presumption secured to the plaintiff the rights of a holder in

due course.  But when the defendant came forward with evi-
dence sufficient for the consideration of the jury tending to show
fraud in the inception of the note, the burden was cast upon the
plaintiff of proving the conditions establishing its character as
holder in due course specified in Section 52 of the Act (G. L.
2921).  Such was the well settled rule of our cases before the
adoption of the Negotiable Instruments Act, among which are
*Pierson* v. *Huntington*, 82 Vt. 482, 74 Atl. 88, 29 L. R. A. (N. S.)
695, 137 A. S. R. 1029; *Capital Sav. Bk. & Tr. Co.* v. *Montpelier
Sav. Bk. & Tr. Co.*, 77 Vt. 189, 59 Atl. 827; *Limerick Bank* v.
*Adams*, 70 Vt. 132, 40 Atl. 166, and such is the practically uni-
form holding of the courts where the question has arisen under
the Act.  See note 18 A. L. R. 26, for a list of the cases.

[11, 12]   There is some diversity of opinion as to what is
necessary to be shown by a plaintiff to discharge this burden.
Prior to the Negotiable Instruments Act two lines of decisions
existed.  According to one line the holder need not prove that
he had no notice of defenses, but he satisfied the burden by show-
ing that he took for value before maturity and under circum-
stances which did not operate to charge him with notice of the
defense.  According to the other line, he was required to show
affirmatively that he had no notice of the defense.  It is said in
the note last cited that there has been quite a uniform tendency
under the Negotiable Instruments Act to adopt the latter theory,
and an examination of the cases seems to support this conclusion.
It has been objected that the rule requires a party to prove a
negative; but even so, it merely puts the burden of proof upon
one who knows the facts.  *Pierson* v. *Huntington*, 82 Vt. at p.
487, 74 Atl. 88, 29 L. R. A. (N. S.) 695, 137 A. S. R. 1029.  While
it might frequently occur that a defendant would be powerless
to prove knowledge of the fraud in the plaintiff where they were
not the immediate parties to the transaction, it would rarely, if
ever, be a hardship upon the plaintiff to require him to show
good faith by proving the circumstances under which he became
the holder of the instrument sued on—facts peculiarly within
his own knowledge.  The rule formulated in the Act requires a
holder who claims the rights of a holder in due course to show
that he did not have actual knowledge of the infirmity or defect
relied upon in defense nor knowledge of such facts that his action
in taking the instrument would amount to bad faith.  What

known facts will charge the holder with bad faith in taking the instrument is left to construction and presents a question of some difficulty.

Prior to the Negotiable Instruments Act two distinct lines of cases had developed in this country. The first had its origin in *Gill* v. *Cubitt,* 3 B. & C. 466, 10 E. C. L. 215, where the rule was distinctly laid down by the court of King's Bench that the purchaser of negotiable paper must exercise reasonable prudence and caution, and that if the circumstances were such as ought to have excited the suspicion of a prudent and careful man, and he made no inquiry, he did not stand in the legal position of a *bona fide* holder. The rule was adopted by the courts of this country generally and seems to have become a fixed rule in the law of negotiable paper. Later in *Goodman* v. *Harvey,* 4 A. & E. 870, 31 E. C. L. 381, the English court abandoned its former position and adopted the rule that nothing short of actual bad faith or fraud in the purchaser would deprive him of the character of a *bona fide* purchaser and let in defenses existing between prior parties; that no circumstances of suspicion merely, or want of proper caution in the purchaser, would have this effect; and that even gross negligence would have no effect, except as evidence tending to establish bad faith or fraud. Some of the American courts adhered to the earlier rule, while others followed the change inaugurated in *Goodman* v. *Harvey.* The question was before this Court in *Roth* v. *Colvin,* 32 Vt. 125, and on full consideration of the question a rule was adopted in harmony with that announced in *Gill* v. *Cubitt,* which has been adhered to in subsequent cases, including those cited above. Stated briefly, one line of cases including our own, had adopted the test of the reasonably prudent man and the other that of actual good faith. It would seem that it was the intent of the Negotiable Instruments Act to harmonize this disagreement by adopting the latter test. That such is the view generally accepted by the courts appears from a recent review of the cases concerning what constitutes notice of defect. Brannan on Neg. Ins. Law, 187-201. To effectuate the general purpose of the Act to make uniform the negotiable instruments law of those states which should enact it, we are constrained to hold (contrary to the rule adopted in our former decisions) that negligence on the part of the plaintiff, or suspicious circumstances sufficient to put

a prudent man on inquiry, will not of themselves prevent a recovery, but are to be considered merely as evidence bearing on the question of bad faith. See G. L. 3113, 3172, where such a course is required in construing other uniform acts.

[13-15]   It comes to this then: When the case has taken such shape that the plaintiff is called upon to prove himself a holder in due course to be entitled to recover, he is required to establish the conditions entitling him to standing as such, including good faith in taking the instrument. It devolves upon him to disclose the facts and circumstances attending the transfer, from which good or bad faith in the transaction may be inferred. The question is generally one of fact for the jury. There is this exception, however, where the evidence of the plaintiff's good faith is undisputed and is not only consistent therewith but is so conclusive that fair-minded men could draw no different inference, it is the duty of the court to decide the question as a matter of law and instruct the jury accordingly. *Spaulding* v. *Mutual Life Ins. Co.,* 94 Vt. 42, 58, 109 Atl. 22. The Act makes no change in the rule respecting such matters. *Mechanics' Savings Bk.* v. *Feeney,* 79 N. H. 267, 108 Atl. 295. It has been applied in *Van Slyke* v. *Rooks,* 181 Mich. 88, 147 N. W. 579; *German-American Nat. Bk.* v. *Kelley,* 183 Iowa 269, 166 N. W. 1053; *Miller* v. *Marks,* 46 Utah 257, 148 Pac. 412.

[16, 17]   It remains to consider whether on the evidence ? reasonable man might think that good faith on plaintiff's part in taking the note was not shown. It could not well be claimed that there was any evidence tending to show actual notice on the part of any one connected with the bank, except Elliott, that the note was tainted with fraud; and, as we have already seen, his knowledge was not imputed to the plaintiff. To show knowledge of such facts that the taking would amount to bad faith it is not necessary that representatives of the bank should know the exact fraud that was practiced upon the defendant, but the defense would be available if the facts within their knowledge tended to show there was something wrong with the transaction. *Paika* v. *Perry,* 225 Mass. 563, 114 N. E. 830. To support a verdict for the defendant there would have to be evidence of circumstances attending the taking of the note, known at the time to the representatives of the bank having to do with the taking, at least sufficient to occasion suspicion of wrong doing. Short of this,

certainly there would be no reasonable basis of an inference other than of good faith. Much of the evidence relied upon as tending to show want of good faith only at the most tends to show that the bank had constructive notice that the note was given for Elliott's accommodation. But if so, its standing as a holder in due course would not be affected thereby, as we have already seen. It is said that the proceeds of the note went to the plaintiff's benefit, since they were used to cover the overdraft at the Waterbury Bank, which in turn covered the overdraft at the plaintiff bank. As matter of fact at the time the note was taken no overdraft appeared on the books of either bank and so Elliott was actually indebted to neither. If traced out it would be discovered that the proceeds of the note really went to the benefit of creditors of the Lumber Company who had been paid with checks on the Waterbury bank. The knowledge that Elliott had previously overdrawn his personal account would have no tendency to occasion suspicion that there was anything wrong with this note, even if the representatives of the bank knew that it was being given for his accommodation. The overdraft had been adjusted and Elliott's account then showed a credit balance. Reliance is placed upon the claim in effect that it was an unusual transaction for the bank—that the note had only one signature and was a large note to be accepted by the bank with only one signature; that the defendant had no "line of credit" with the bank, was not accustomed to borrowing such an amount of the bank and had no business requiring such a loan; that the transaction was "put through the bank" on Elliott's approval alone, without the approval of the board of directors first had.

The evidence was uncontradicted that Elliott had authority and was accustomed to approve and direct loans as this loan was approved and directed and that the defendant was a regular customer of the bank. Assuming that the evidence had the tendency claimed for it, we are at a loss to see how in the circumstances it can be thought that the cashier had any reason to suspect fraud in the inception of the note or any wrong doing in the transaction. The note was taken in usual course, for full value and without circumstances calling for or warranting inquiry respecting the occasion for giving it. This being so, it cannot be conceived how a reasonable man could think that the

note was taken otherwise than in good faith.   It follows that the court did not err in directing a verdict for the plaintiff.

*Judgment affirmed and cause remanded for further proceedings respecting the liability of the trustee.*

NOTE:—MILES, J., having retired took no part in the disposition of the case.