WESTERN SURETY COMPANY v. WILLIAM FRIEDERICHS.[1]

March 26, 1954.

No. 36,183.

[1]Reported in 63 N. W. (2d) 565.

*Leo A. Reuther* and *Kirby, Simons, McDonnell & Kirby,* for appellant.

*Nelson & Clemmensen,* for respondent.

MATSON, JUSTICE.

Plaintiff appeals from a judgment for defendant.

On April 10, 1951, August Johnson, treasurer of School District No. 14, deposited $9,895.46 for and in such school district's bank account in the Farmers & Merchants State Bank in Breckenridge, Minnesota. Upon making the deposit he had the teller deduct $1,863.90 from the deposit and make out a cashier's check to the defendant in the amount of $1,537.50 and one to another person for $325. To the upper left-hand corner of the $1,537.50 check involved herein was added the notation "Dist. No. 14, Remitter." Johnson delivered this check the same day to the defendant at the latter's farm in payment of a personal debt which was then due. The next day defendant deposited the check to his personal account at the same bank. Although defendant was a director of the bank he had never been active in its management. He lived several miles out in the country where he operated a farm located at least five miles from the nearest boundary of School District No. 14. Defendant contends, and the trial court so found, that at the time he accepted the cashier's check and collected the proceeds he did not know that August Johnson was the treasurer of said School District No. 14; that he did not notice the notation upon said check; and that he had no knowledge as to the source of the funds represented by said cashier's check.

The plaintiff, Western Surety Company, had bonded Johnson in his position as treasurer and upon discovery of his defalcations paid off $20,271.04, the amount embezzled over a period of years. Plaintiff, after making a futile demand upon Johnson for reimbursement, commenced this action against the defendant to recover that part of the embezzled funds which was used to purchase the cashier's check given by Johnson to defendant in payment of the personal debt. The court found for the defendant, and plaintiff appeals from the judgment entered.

We have these issues:

(1) May a payee of a negotiable instrument who satisfies the requirements listed in M. S. A. 335.201[2] be a holder in due course?

(2) Where the defendant as payee had no actual knowledge of any infirmity in the cashier's check or of any defect in the title of the person negotiating it, was the bare notation, "Dist. No. 14, Remitter" sufficient to charge him with notice that another had an interest in the instrument?

■ Before answering the question of whether defendant was a holder in due course we must determine the issue of whether under the Uniform Negotiable Instruments Act (c. 335) one who satisfies the requirements of § 335.201 (NIL 52) is disqualified from being a holder in due course merely because he happens to be the payee named in the negotiable instrument. In short, may a payee ever be a holder in due course? The question is one of first impression in this jurisdiction. A careful reading of the Uniform Negotiable Instruments Act as a whole, as well as a consideration of the views of leading authorities and of the conflicting decisions of other jurisdictions, leads us to adopt the affirmative view that a payee may be a holder in due course to the same extent as any other holder. This affirmative view has the approval of outstanding authorities and of many jurisdictions.[3]

---

[2]See footnote 4.

[3]Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, 66 N. E. 646, 97 A. S. R. 426; Liberty Trust Co. v. Tilton, 217 Mass. 462, 105 N. E. 605, L. R. A. 1915B, 144; Price v. Klett, 255 Mich. 354, 238 N. W. 253; American

Section 335.01, subd. 9 (NIL 191), defines a *holder* as "the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof." The term *holder* as found in § 335.201[4] (NIL 52) is used with no apparent intent to exclude a payee. Section 335.201(4) does indicate that the instrument must have been obtained through *negotiation*. What constitutes negotiation is set forth in § 335.15 (NIL 30), which provides:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the endorsement of the holder completed by delivery."

■■■ The last sentence of § 335.15 (NIL 30) providing that *if the instrument is payable to order it is negotiated by the endorsement of the holder* is merely descriptive of one method (but not necessarily the only method) of transfer *after* the instrument has come into the hands of the payee or other holder (endorsee) and does not restrict the comprehensive language of the first sentence.[5]

"The Supreme Court of Massachusetts, in Liberty Trust Co. v. Tilton, 217 Mass. 462, 465, 105 N. E. 605, L. R. A. 1915B, 144, speak-

Nat. Bank v. Kerley, 109 Ore. 155, 220 P. 116, 32 A. L. R. 262; Union Bank & Trust Co. v. Girard Trust Co. 307 Pa. 488, 161 A. 865; 81 U. of Pa. L. Rev. 333; Howard Nat. Bank v. Wilson, 96 Vt. 438, 120 A. 889; Kohler v. First Nat. Bank, 157 Wash. 417, 289 P. 47; Farmers L. Ins. Assn. v. Houghton, 207 Wis. 357, 241 N. W. 352; Beutel's Brannan, Negotiable Instruments Law (7 ed.) § 52, pp. 675 to 682; Britton, Bills and Notes, § 122; 36 Yale L. J. 608 to 631, 1005 to 1014; 9 Minn. L. Rev. 101 to 121.

[4]"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

[5]Howard Nat. Bank v. Wilson, 96 Vt. 438, 120 A. 889.

ing of this sentence of sec. 30, said that 'it. was not intended to in-clude all the ways in which an instrument might be negotiated nor to restrict the comprehensive terms of the preceding sentence. Plainly, under these two secs. (30 and 191), *a negotiable instrument payable to a named payee is negotiated when the physical possession of it is handed for value to the person named as payee.* One effect of the last sentence of sec. 30 is to describe the method by which the person who first becomes holder may pass it. It does not compre-hend all the ways by which an instrument may be negotiated.' " Beutel's Brannan, Negotiable Instruments Law (7 ed.) § 52, p. 676. (Italics supplied.)

Since a payee is a holder, a transfer to him by the maker, drawer, or remitter is a negotiation within the meaning of § 335.201(4), (NIL 52 [4]). Although there are some authorities to the contrary, the better rule, and the one which we adopt, is that since a remitter has a legal right in the instrument he must be considered to have the power to negotiate it, and thus, an innocent payee who takes a negotiable instrument for value from a remitter, or his agent, must be deemed a holder in due course.[6]

In concluding that a payee may be a holder in due course we have not overlooked the phrase "immediate parties" as used in § 335.09 (NIL 16), which prescribes when a delivery of a negotiable instrument is effectual. The phrase "immediate parties" is properly construed to mean the parties who are immediate in substance and not merely in form. The payee of an instrument is in proximity to the maker but he may or may not be in privity with, or immediate to, the maker. *Immediate* means privity and not merely proximity.[7]

The view that a payee may be a holder in due course has a solid

---

[6]Armstrong v. American Exchange Nat. Bank, 133 U. S. 433, 452 to 454, 10 S. Ct. 450, 455 to 456, 33 L. ed. 747, 754 to 755; Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, 66 N. E. 646, 97 A. S. R. 426; Bank of Com-merce & Savings v. Randell, 107 Neb. 332, 186 N. W. 70, 21 A. L. R. 1360; 12 Minn. L. Rev. 584, 600.

[7]Howard Nat. Bank v. Wilson, 96 Vt. 438, 120 A. 889; Liberty Trust Co. v. Tilton, 217 Mass. 462, 105 N. E. 605, L. R. A. 1915B, 144; Beutel's Brannan, Negotiable Instruments Law (7 ed.) § 52, p. 677.

foundation historically. Prior to the adoption of the Uniform Negotiable Instruments Act, it was the general rule at common law that a payee could be a holder in due course.[8] The rule is also in accord with the requirements of present-day commercial practice.[9] No useful purpose will be served in discussing the theory of decisions to the contrary such as the basis of the leading case of Vander Ploeg v. Van Zuuk, 135 Iowa 350, 112 N. W. 807, 13 L.R.A.(N.S.) 490, since the subject has been exhaustively treated elsewhere.[10]

■ Upon the evidence it must be admitted that the defendant was a holder in due course within the meaning of the four requirements of § 335.201 (NIL 52) unless the bare notation "Dist. No. 14, Remitter" was sufficient to charge him with notice of an infirmity in the instrument or of a defect in Johnson's title. Section 335.211 (NIL 56) provides that notice means actual notice and we have so held. State Bank v. Adams, 142 Minn. 63, 170 N. W. 925. Mere negligence is not sufficient to prove bad faith under this section, but if the purchaser had knowledge of the facts which should put him on inquiry, taking a negotiable instrument without investigation amounts to bad faith. § 335.211; Fortier v. McRae, 190 Minn. 571, 252 N. W. 833. Defendant testified and the court justifiably found that the defendant did not see the notation "Dist. No. 14, Remitter." An assignee is, however, chargeable with notice of infirmities appearing on the face of the instrument itself. Slimmer v. State Bank, 134 Minn. 349, 159 N. W. 795. The question, therefore, simmers down to whether the bare notation "Dist. No. 14, Remitter" was sufficient to put the defendant on notice of an infirmity. The trial court was right in concluding that the notation was insufficient, for unless a person is peculiarly acquainted with the procedure of handling school funds, the words "Dist. No. 14" are meaningless.

[8]Watson v. Russell [1862–1863] 3 B. & S. 34; Fairbanks v. Snow, 145 Mass. 153, 13 N. E. 596; 9 Minn. L. Rev. 101, 104; Britton, Bills and Notes, § 122; 36 Yale L. J. 608, 619.

[9]See, Howard Nat. Bank v. Wilson, 96 Vt. 438, 447, 120 A. 889, 892, and Kohler v. First Nat. Bank, 157 Wash. 417, 426, 289 P. 47, 50.

[10]See, 9 Minn. L. Rev. 101; 36 Yale L. J. 608 to 631, 1005 to 1014; Beutel's Brannan, Negotiable Instruments Law (7 ed.) § 52, pp. 675 to 684.

There is nothing to indicate that they refer to a school district, nor does the phrase indicate that the cashier's check was purchased by school funds which were to be used only for certain purposes. Had the words been "for school purposes only" or some other meaningful phrase, the result here might have been different. The defendant had no actual knowledge of the fraud practiced by Johnson, and the notation on the check was clearly insufficient to charge him with a notice of the true situation.

The judgment of the trial court is affirmed.

Affirmed.