**DAKOTA TRANSFER & STORAGE COMPANY, a Corporation, Plaintiff and Appellant,**

v.

**The MERCHANTS NATIONAL BANK & TRUST COMPANY, a Corporation, Defendant and Respondent.**

No. 7689.

Supreme Court of North Dakota.

Dec. 9, 1957.

Cupler, Tenneson & Serkland, Fargo, for appellant.

Nilles, Oehlert & Nilles, Fargo, for respondents.

SATHRE, Judge.

The plaintiff, a foreign corporation, brought this action against the defendant, a national banking corporation organized under the National Banking Act, 12 U.S. C.A. § 21 et seq., to recover $1,070.71 on a cashier's check issued by the defendant bank to the plaintiff on the 7th day of August 1952 upon which cashier's check the defendant had stopped payment on the ground that it received no consideration therefor. The case was tried in the district court of Cass County, North Dakota, Hon. John C. Pollock, Judge. From a judgment in favor of the defendant the plaintiff appealed. The material facts are embodied in a stipulation executed by the attorneys for the respective parties, and is as follows:

"Stipulation

"It is stipulated By and between the plaintiff and the defendant, through their respective attorneys, that the following facts are true, and each of the said parties agrees that no proof need be offered with reference to the said facts.

"1.

"That on and prior to August 6, 1952, one Francis Perkins was an employee of the plaintiff.

"2.

"That on and about said date, the plaintiff's agent, Joe Yeager, made a casual check of the accounts of said Francis Perkins and determined that there was a shortage of funds in said accounts.

"3.

"That on the 6th day of August 1952, Francis Perkins gave to Joe Yeager a check payable to the Dakota Transfer and Storage Company in the sum of One Thousand Seventy and 71/100 ($1070.71) Dollars; that said check was given, subject to collection, in part payment of the shortages in the accounts of Francis Perkins; and that said check was drawn on The Merchants National Bank and Trust Company of Fargo and signed by Francis Perkins.

"4.

"That the said Francis M. Perkins had a personal checking account at the defendant's bank on which the said check above-described was drawn and that on August 6th, 1952, there was a balance of One hundred six and 45/100 ($106.45) Dollars; that on the 7th day of August, 1952 the said Francis M. Perkins deposited to his account in the defendant bank a check in the amount of Two Thousand five hundred ($2,500.00) Dollars payable to cash and drawn on the Foster County State Bank of Carrington, North Dakota; that the said check was signed "The Green Diamond, F. M. Perkins"; that the said check maker was the said Francis M. Perkins, doing business under the said name; that The Merchants National Bank and Trust Company, in accordance with the usual bank practice, credited the amount of the said Check to Francis M. Perkins subject to collection; that after the said deposit was made on the 7th day of August 1952, the plaintiff, Dakota Transfer & Storage Company, signed said check dated August 6, 1952, in the amount of One Thousand seventy and 71/100 ($1070.71) Dollars on the

reverse side and presented the same to the defendant, The Merchants National Bank and Trust Company for payment; that the said plaintiff received in exchange therefor a cashier's check in the amount of $1070.71, payable to Dakota Transfer and Storage Company and drawn on the said defendant, The Merchants National Bank and Trust Company. That it was the usual practice for the plaintiff to transfer funds to its home office in St. Paul, Minn. by cashier's check or bank draft, rather than forward the checks or cash received from customers.

"5.

"That thereafter, on the 9th day of August 1952, the Foster County State Bank of Carrington returned the check in the amount of $2500.00 drawn by The Green Diamond, F. M. Perkins on the Foster County State Bank of Carrington, North Dakota, and dated August 6, 1952, to the said The Merchants National Bank & Trust Company because there were insufficient funds in the drawer's account in the said Foster County State Bank.

"6.

"That the defendant, The Merchants National Bank and Trust Company, duly and promptly notified the plaintiff, Dakota Transfer and Storage Company that the said cashier's check would not be paid on presentment.

"Dated this 5th day of April, 1955."

The stipulation was received in evidence whereupon plaintiff rested.

The defendant then called for cross examination under the statute, Joe Yager, the sales representative of the plaintiff. He testified that he was familiar with the transactions involving the activities of Francis M. Perkins who was agent of the plaintiff at Carrington and who made the deliveries for the plaintiff in the Carrington territory. He testified that when Francis M. Perkins

made collections for the plaintiff company, his employer, he deposited money in a bank at Carrington and sent a copy of the remittance to plaintiff's Minneapolis office. The witness Yager had gone to Carrington a day or two before August 6, 1952, to check up on shortages of Francis M. Perkins in accordance with statements received from plaintiff's Minneapolis office. He stated that as far as he knew on August 6, 1952, the amount of the shortage of Francis M. Perkins in the funds belonging to the plaintiff was in the sum of $1,070.71 and that Perkins gave him a check in that amount drawn on the defendant the Merchants National Bank & Trust Company of Fargo. We quote from his testimony:

"Q. But you knew at that time that you probably had more money coming. A. To the best of my knowledge, at the time of the settlement it was what he owed. I had received the bills from the Minneapolis office that were unpaid and that was the total we arrived at.

"Q. And later you arrived at a greater total? A. If they did, I did not know about it.

"Q. Is it not a fact that the total amount of the shortage was about $3000.00? A. That is something I have been informed of.

"Q. Isn't it a fact that you made a claim on his bond for about $3000.-00? A. That is something I do not know, but at the time I checked out that was my understanding from the bills I had, that was the total amount."

It is established by the stipulated facts and the testimony of Yeager that Francis M. Perkins was the agent of the plaintiff at Carrington, N. D. and had charge of defendant's business at that point. It appears further from the evidence that Francis M. Perkins was engaged in a private business in Carrington, known as the

"Green Diamond." The check for $1,070.71 drawn by Francis M. Perkins on the defendant bank was delivered to Yeager on August 6, 1952, in payment of shortages of Mr. Perkins in his account with the plaintiff. The plaintiff presented this check to the defendant bank for payment on August 7, 1952 and received a cashier's check therefor. On the same day Francis M. Perkins drew a check in the sum of $2,500 on the Foster County State Bank of Carrington, North Dakota, payable to cash and deposited the same to his credit in the defendant bank. This check was signed "Green Diamond, Francis M. Perkins". The defendant credited the same to the account of Francis M. Perkins in accordance with the usual banking practice, subject to collection. This check was returned to defendant August 9, 1952, with the notation "Not sufficient funds," and the defendant immediately notified plaintiff thereof. The actual balance in the account of Perkins on the day plaintiff presented the Perkins check for $1,070.71 was $106.45. The defendant therefore stopped payment of the cashier's check.

On this appeal the plaintiff contends that the trial court erred in holding that there was no consideration for the cashier's check issued by the defendant to the plaintiff, and that the evidence is wholly insufficient to establish a defense to plaintiff's claim. It is asserted that a cashier's check is not subject to countermand, and that under Section 41-0502, NDRC 1943, the plaintiff was a holder in due course and had complied with all of the requirements of said Section which reads as follows:

Section 41-0502:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without no-

tice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

In support of its claim that a cashier's check is not subject to countermand plaintiff cites the case of Drinkall v. Movius State Bank, 11 N.D. 10, 88 N.W. 724, 57 L.R.A. 341. It is true that the opinion in that case states that as a general rule that a cashier's check is not subject to countermand. It was held, however, that under the facts in the case that the cashier's check there involved was subject to countermand. The plaintiff in that case had deposited $200 in the Movius State Bank and in return therefor had received a cashier's check. On the same evening he went to a gambling place and drank sufficient liquor to become intoxicated and there engaged in a gambling game operated by a device known as a roulette wheel. He was induced to endorse his cashier's check and turn it over to the operator of the gambling place. The next morning however he went to the bank which had issued the cashier's check and in the presence of the operator of the gambling place demanded that payment of the check be stopped. The check was paid over his protest. Thereafter he brought action against the bank for the amount of the cashier's check. The trial court rendered judgment in his favor which was affirmed on appeal. The issue in the case was whether payment of the check was made in good faith and without notice of any defect in the title of the party who claimed to be a bona fide holder.

Plaintiff cites also the case of Western Surety Company v. Friederichs, 241 Minn. 492, 63 N.W.2d 565. The facts in that case were as follows:

The treasurer of a school district had deposited school funds in the sum of $9,895.46 in the school district's bank account, in the Farmers & Merchants State Bank in Breckenridge, Minnesota. Upon making the deposit he had the teller deduct $1,863.90 from the deposit and received therefor a cashier's check payable to defendant Friederichs in the sum of $1,537.50. In the upper left hand corner of cashier's check there was added a notation "Dist. No. 14 Remitter." The school treasurer delivered the check the same day to the defendant in payment of a note and defendant deposited the check in his bank the following day. The plaintiff Western Surety Company had bonded the treasurer and on discovery of his defalcations paid the shortage. Thereafter the plaintiff after making futile demands upon the treasurer for payment and reimbursement, commenced action against the defendant to recover that part of the embezzled funds which were used to purchase the cashier's check given by the treasurer in payment of his personal debt. The issue in that case was whether or not the defendant Friederichs was a holder in due course of the cashier's check within the meaning of the provisions of the negotiable instrument law. The question, therefore, was whether or not the notation on the check "Dist. No. 14 Remitter" was sufficient to put the defendant on inquiry as to any infirmity in the title to the cashier's check. The trial court held that the notation was insufficient for such purpose and that defendant was an innocent holder in due course. Upon appeal the judgment was affirmed by the Supreme Court.

The defendant in the instant case contends that it received no consideration for the issuance and delivery of the cashier's check to the plaintiff for the reason that the Perkins check it received in exchange therefor was without any value, since the drawer thereof did not have funds on deposit sufficient to pay it. It is undisputed that Perkins did not at any time have funds in the bank sufficient to pay the check. The trial court held, therefore, that the issuance and delivery by the defendant of the cashier's check to the plaintiff was without consideration and judgment was entered for defendant.

A similar state of facts was before the Supreme Court of the State of California in the case of National Bank of California v. Miner, 167 Cal. 532, 140 P. 27. In that case the bank had issued a cashier's check in exchange for a check drawn upon a bank in which the drawer did not have sufficient funds to pay it. Upon discovery of said facts the bank which had issued the cashier's check refused payment. The trial court held that the bank which issued the cashier's check was liable for the payment thereof and an appeal was taken to the Supreme Court. The Supreme Court reversed the judgment and held that the evidence showed the nature of the mistake under which the cashier's check was issued, the notification to the respondent bank that it had been issued through error, and that it had been issued without any consideration whatever.

A like result was arrived at in the case of Kinder v. Fisher's National Bank, 93 Ind.App. 213, 177 N.E. 904, 906. We quote the following from the opinion:

"The bank has pleaded failure of consideration as they must do under the Negotiable Instrument Law (Burns' Ann.St.1926 § 11342 et seq.) if they rely thereon, and have proven that the check was not paid upon presentment, and that it has never received payment upon said check. (This by the agreed statement of facts.) There is here a total failure of consideration. It has many times been held that a promissory note or a bill of exchange must be supported by a consideration, and that a plea of want or failure of consideration is a valid defense in an action between the original parties." (Numerous citations.)

Under Subdivision 3 of Sec. 41-0502 which is a part of the Uniform Negotiable

Instrument Law, a holder in due course of an instrument must satisfy the following requirement:

3. "That he took it in good faith *and for value*". (Emphasis supplied.)

■ It is clearly established by the facts in the instant case that the defendant received nothing of value for the cashier's check. The Perkins check in the sum of $1,070.71 which the plaintiff presented to the defendant bank and in return for which the defendant issued to the plaintiff the cashier's draft was valueless at the time of the presentment and was never made good. In other words the plaintiff presented to the defendant bank a worthless check for which it received the cashier's check involved here. Clearly the plaintiff did not qualify under the provisions of Subd. 3 of Section 41–0502, NDRC 1943, quoted herein, because the plaintiff had not parted with anything of value. It had not in anyway changed its position with reference to its claim against Perkins and it still had its cause of action against him for the total amount of his shortage.

Under the statute quoted a holder in due course is a holder who has taken a bill of exchange in good faith and for value. Not only must the holder take the bill in good faith, but he must also take it for value. The defendant in the instant case has pleaded in its answer that there was a total lack and failure of consideration for the issuance of the cashier's check involved here. The stipulated facts establish that defendant received nothing of value in return for the cashier's check. The rights of innocent holders for value without notice are not involved in this case. The controversy here is between the original parties. The plaintiff has lost no rights that it had before the issuance of the cashier's check.

The judgment is affirmed.

GRIMSON, C. J., and JOHNSON, BURKE, and MORRIS, JJ., concur.