Grafton, }
Jan. 6, 1920. }

SECURITY NAT. BANK OF JACKSON *v.* ALBERT E. PORTER & a.

In an action by the indorsee of notes against the maker, where the defence was the fraud of the payee in procuring the notes, the unexplained facts that the plaintiff directed one of the notes should not be protested, that the payee brought suit on another in his own name, and that this note was subsequently by amendment included in the plaintiff's action on all the other notes, together with other circumstances, would warrant a finding that the plaintiff is not a *bona fide* holder: in such case the direction of a verdict for the plaintiff was error.

ASSUMPSIT, upon four promissory notes. At the close of the evidence the court directed a verdict for the plaintiff and the defendants excepted. Transferred by *Branch,* J., from the May term, 1919, of the superior court. The facts appear in the opinion.

*Alvin F. Wentworth* and *Walter M. Flint,* for the plaintiff.

*Owen & Veazey* and *Charles B. Hibbard,* for the defendants. ,

WALKER, J. The plaintiff produced four promissory notes in evidence, upon which the suit was brought, which were signed by the defendants, each for two hundred and twenty-five dollars, dated at Ashland, N. H., May 31, 1917, payable to the order of Partin Manufacturing Company in three, four, five and six months respectively. The notes were indorsed in blank by the payee and, as claimed by the plaintiff, discounted by it before either became due, and without notice of any defect in the notes.

The defence is that the defendants were induced to sign the notes through the fraud of the payee in regard to a certain contract of the payee which was the consideration for the notes. The ruling of the court ordering a verdict for the plaintiff is based upon the theory that, if the defence suggested is valid as against the payee, the evidence does not warrant a finding that the plaintiff had notice when it discounted the notes, that they were procured by the fraud of the payee, or that the plaintiff is not an innocent holder of the same for value. The question is, therefore, whether there is any evidence which would justify the jury in finding that the plaintiff took the notes with knowledge or notice that their validity was in doubt as between the makers and the payee. *Hallock* v. *Young,* 72 N. H. 416.

While the evidence reported does not show directly that the plaintiff is chargeable with such knowledge, it discloses circumstances from which reasonable men acting as jurors might reach that conclusion. Although the plaintiff's officers who discounted the notes testified positively in their depositions that they acted in absolute good faith and without any suspicion that the makers had a valid defence against the payee, some of the evidence might legitimately induce the belief in the minds of the jury that their testimony was not entitled to full credence.

It appears that two or three days before the first note became due the plaintiff sent it to a bank in Ashland, where the makers lived, for collection, with the instruction, that if it was not paid, to "return without protest." Why it was willing to forego the advantage of a formal protest as evidence of its right to recover upon the notes against the indorser is not clearly disclosed by the evidence. It is true the plaintiff's cashier testified that in such cases it was the custom of the bank not to insist upon a protest; but that is a doubtful explanation when as indorsee it wished to hold the indorser responsible upon the default of the makers. The jury as practical business men might think the cashier's evidence was not entitled to full credit, and infer from the non-protest of the notes that the plaintiff was not a *bona fide* owner of them, but held them merely for collection for the benefit of the indorser. If such was the fact, it could not recover of the makers. The evidence upon this point is open to serious suspicions. *Mechanics Sav. Bank* v. *Feeney, ante,* 267.

On the twenty-ninth day of April, 1918, suit was brought in the name of the indorser against the makers, returnable at the May term of the superior court, which contained merely the common counts.

One of the defendants testified that this suit was upon the first two notes. The jury was authorized to find that such was the fact. If the plaintiff was the *bona fide* holder of these notes, the bringing of the suit in the name of the indorser would seem to require some explanation why it did not bring the suit in its own name. But there is an entire absence of evidence in explanation of this important circumstance. So far as appears, a finding that the indorser was the beneficial owner of the first two notes when this suit was brought is amply justified, and, if this is the fact, it indicates very strongly that the plaintiff was not the true owner of them. Its relations in fact with the indorser in reference to the notes are left in obscurity and doubt, which authorize an inference that it was merely holding the paper for collection in the name of the payee, in accordance with some undisclosed arrangement. The absence of explanatory evidence of the acts of a party is often strong evidence against him.

It is also significant that on the thirty-first day of July, 1918, the present suit was brought in which the plaintiff declared on the last two notes and subsequently by an amendment included in the action the first two notes upon which the first action was based, presumably having abandoned that action. What the reason was for this procedure and whether it indicated some new arrangement by the plaintiff and the payee, is by no means clear; but it is open to inferences not favorable to the plaintiff's assertion of absolute ownership of the notes as against the defendants and has a tendency to impeach the credibility of the plaintiff's witnesses. Evidence explanatory of the situation would seem to be necessary before it could be held as a matter of law that the plaintiff is entitled to a verdict. The evidence does not conclusively show that it held the notes in good faith and without knowledge of facts, showing that the defendants had been defrauded by the indorser into signing them. It authorizes the inference that the plaintiff's officers were in collusion with the indorser to avoid the makers' claim of fraud.

Whether there are other circumstances disclosed by the evidence indicating bad faith on the part of the plaintiff it is unnecessary to decide, since those already considered are amply sufficient to invalidate the ruling of the court in ordering a verdict for the plaintiff.

*Exception sustained: new trial.*

All concurred.