THE MECHANICS SAVINGS BANK *vs.* RICHARD H. BERRY.

Somerset.    Opinion November 18, 1920.

*Fraud or infirmity in the inception of a promissory note may constitute a defense*
*between the original parties, but as against an indorsee for value before maturity it*
*is not a defense, unless it is shown that plaintiff had actual knowledge of such*
*fraud or infirmity at the time of the purchase of the note, or had knowl-*
*edge of such facts that his action in taking the note amounts*
*to bad faith.    Public Laws, 1917, Chap. 257,*
*Sec. 56.*

In an action by the indorsee of two promissory notes against the maker, before
the Law Court upon defendant's exceptions to a directed verdict for the plain-
tiff, it is

*Held:*

1.   That it is not controverted that the plaintiff purchased the notes before
maturity.

2.   That conceding such fraud existed in the inception of the notes as would con-
stitute a defense between the original parties, the facts disclosed in the evidence
do not form a reasonable basis for the inference of "actual knowledge by the
plaintiff of the infirmity, . . . . or of such facts that its action in taking
the instruments amounted to bad faith," under the Uniform Negotiable Instru-
ment Act, Public Laws 1917, Chap. 257, Sec. 56, and the previous decisions of
this court.    The verdict was properly ordered, as a verdict for the defendant
would not have been allowed to stand upon the evidence.

On exceptions.    This is an action of assumpsit on two promissory
notes, each dated July 7, 1917, payable to the order of Partin Manu-
facturing Company, for two hundred and twenty-five dollars, signed
by the defendant, and endorsed by the payee to the plaintiff before
maturity.    Plea, the general issue, and a brief statement alleging
fraud in the inception of the notes, knowledge by plaintiff, failure of
consideration, lack of good faith, and that the notes were not taken
in the usual course of business.    Defendant attempted to introduce
testimony showing fraud or irregularities between the original parties,
but on objection by counsel for plaintiff, on the ground that it must
first be shown that the plaintiff was not a purchaser in good faith, and

that it had knowledge of any irregularities or infirmities resulting from acts between the original parties, the testimony was excluded by the presiding Justice and an exception taken.

After the introduction of testimony was completed, the presiding Justice directed the jury to return a verdict of $450, and interest, for plaintiff, and defendant excepted.  Exceptions overruled.

The case is fully stated in the opinion.

*Thomas A. Anderson*, for plaintiff.

*John W. Manson*, for defendant.

SITTING:  CORNISH, C. J., SPEAR, PHILBROOK, MORRILL, WILSON, JJ.

CORNISH, C. J.  The plaintiff bank is the indorsee of two promissory notes for $225 each.  The defendant is the maker and resists payment on the ground that they were obtained of him by the payee, the Partin Manufacturing Company of Memphis, Tennessee, through fraud.  The plaintiff replies that even though fraud existed in the inception of the notes the plaintiff was a bona fide purchaser for value before maturity and without notice of the fraud, and therefore is entitled to recover.

Two exceptions were taken by the defendant.  The first is based upon the exclusion of evidence offered by him under his brief statement tending to show fraud on the part of the original payee without first showing knowledge of the fraud on the part of the plaintiff.  It is unnecessary to consider this, as the second exception, which was to the direction of a verdict for the plaintiff by the presiding Justice, covers the entire case, and in considering the second, the defendant's rights under the first are preserved by assuming that all the offered testimony relating to the original fraud is in the case.  In other words we may assume the existence of such deception and fraud on the part of the Partin Manufacturing Company in obtaining the notes as would afford a valid defense in a suit between the original parties.

It is further admitted that the plaintiff took the notes before maturity.  Therefore the only issue left for determination is the plaintiff's actual knowledge of the fraud or its bad faith, and that is a question of fact.

Upon this point the plaintiff introduced the deposition of Mr. MacKinnon, the president of the plaintiff bank, who testified that the bank is located at Des Moines, Iowa, and has been in existence since

1904; that he has been connected with it since its organization, at first as cashier, later as vice president, and for the past nine years as president; that the total resources are over two million dollars; that on June 6, 1917, Mr. G. H. Partin, president of the Partin Manufacturing Company, called at the bank and was introduced to the cashier and himself by one Graham, then a practicing attorney in Des Moines and now a Judge-Advocate in the United States Army. Mr. Partin stated that he desired to negotiate some paper with the bank and produced a statement of a firm of public accountants in Memphis, dated April 2, 1917, and covering the sales, operating costs and net gains of the company for the months of January, February and March, 1917, showing net gains of over forty thousand dollars. He also produced copies of letters of recommendation, either of Mr. Partin or of the company, from the officers of the Germania Savings Bank and Trust Company, the National City Bank and the People's Savings Bank and Trust Company, all of Memphis, and The National Bank of the Republic of Chicago, Illinois, the originals being in the hands of their New Hampshire attorneys. The cashier, at the request of the president, then ascertained the financial rating of the parties whose notes Mr. Partin wished to negotiate, found it to be satisfactory and so reported to the president.

On the following day, June 7, 1917, Mr. Partin returned to the bank and the transaction was completed. The Partin Manufacturing Company indorsed and delivered twenty-four notes against five different parties, aggregating $4500 in amount, the bank paying the face value thereof less ten per cent discount, the notes carrying no interest until maturity and being given on from two to eight months' time. The defendant's notes were not in this group first negotiated.

On July 26, 1917, before any of the notes purchased on June 7 had matured, Mr. Partin came to the bank again and desired to negotiate another lot of twenty-eight notes against six different parties, aggregating $6100 in amount. Among these notes were four of $225 each against the defendant Berry, all dated July 7, 1917, and due in October, November, December and January respectively. After looking up the commercial ratings of the several makers, including that of the defendant, the bank on July 27th purchased this lot on the same basis as the first, that is, face value less ten per cent discount. These notes also carried no interest until maturity. Payment in both cases was made partly by certificates of deposit, partly by cash

and the balance of $1400 in a deposit account not subject to check. This precaution was taken in order to protect the bank against loss on any notes that might be returned unpaid when sent forward for collection at maturity. Several protested notes were subsequently charged off and these exhausted this protecting account. Most of the notes however have been paid, the defendant himself having paid two of his, leaving unpaid the two in suit.

Mr. MacKinnon further testifies that he knew nothing of the nature of the business carried on by the Partin Manufacturing Company, or the consideration they had given for the notes, except that in a general way the notes were given for advertising matter sold the parties; that the purchase, indorsement and transfer were made in good faith on the part of the bank, in the ordinary course of banking business, and that the bank believed them to be free from infirmity. This constitutes a summary of the evidence for the plaintiff.

The defendant offered no testimony whatever in contradiction of this evidence and frankly admitted that he had none to offer on this point. His evidence was confined to the proof of the original fraud.

But he claims that from the evidence of the president and from the circumstances of the case, a jury would be warranted in inferring and therefore in declaring that the bank did have actual knowledge of the initial fraud or knowledge of such facts that its action in taking the notes amounted to bad faith. The fraud which created the infirmity in the Berry notes is alleged to have been perpetrated by an agent of the Partin Company in Pittsfield, the residence of the defendant. That company is a sales promotion business and the consideration of these notes was a contract on its part to increase the business of the defendant who was a retail druggist, and to furnish certain valuable prizes for him to display for six months and then award to the successful competitors. The principal prize was an automobile. The agent further agreed that the company had not inaugurated and would not inaugurate or carry on the same or a similar campaign within twenty miles of Pittsfield. It is the designed breach of all these agreements which the defendant says constituted fraud on the part of the company.

Admitting this to be true, what does the defendant rely upon here to prove actual knowledge of that fraud on the part of the bank or to show bad faith on its part?

As already stated, he relies wholly on inferences to be drawn as he says from the plaintiff's evidence and from the circumstances. These may be summarized as follows: That the purchase by a bank in Iowa from a party in Tennessee of notes against a party in Maine was an unusual transaction; that it would not ordinarily be completed without more investigation of the maker's financial condition than an examination of his rating in a commerical agency; that ten per cent was an excessive discount; that although the Partin Company was afterwards rumored to be in bankruptcy no notice was sent to the bank; that the accountants' statement furnished the bank was valueless; that the letters of recommendation may have been forged, and that the method of payment and the retention of $1400 for protection might indicate fraud.

All these points are strongly urged in argument by the learned counsel for the defendant, but the plaintiff replies that the transaction was not an unusual one in banking circles, that the investigation in a reputable commercial agency is in accord with usual practice, that ten per cent is not an extraordinary rate for discount by western banks, especially as the notes bore no interest until after maturity and the longest ones ran eight months; that the accountants' statement showed a concern doing a prosperous business; that there is no evidence that the letters of recommendation were forged, and that even if forged by the Partin Company, if they were presented to the bank as genuine and acted upon by it, the forgery could in no degree affect its good faith; that the manner of payment was not irregular, full payment in cash not being required, *Hobart* v. *Penney,* 70 Maine, 248, and that the retention of $1400 as a guaranty fund was a safe and conservative move on the part of a prudent investor.

In our opinion the points raised by the defendant do not furnish a reasonable basis for the inference of actual knowledge of fraud or bad faith on the part of the plaintiff. They do not rise above mere surmise or suspicion, even if they amount to that, and suspicion if proved is not sufficient to constitute a defense.

This is the first case to come before this court under the so-called Uniform Negotiable Instrument Act passed by the Legislature in 1917, Public Laws 1917, Chapter 257, that act having taken effect on July 6, 1917, and these notes being dated July 7, 1917. Section 56 of that act defines what constitutes notice of defect, viz: "To constitute notice of an infirmity in the instrument . . . . the

person to whom it is negotiated must have had actual knowledge of the infirmity . . . . or knowledge of such facts that his action in taking the instrument amounted to bad faith." This is in harmony with the previous decisions of this court to this effect, that the mere existence of circumstances calculated to excite suspicion in the mind of a prudent man is not sufficient to prevent recovery. *Farrell* v. *Lovett*, 68 Maine, 326. "Suspicious circumstances attending the transaction of indorsement, especially if aided by auxiliary evidence may have a tendency to show to the minds of a jury that the indorsee knew of the fraud or that he acted in bad faith. But such circumstances do not as a matter of law show such a thing. If an indorsee had reasonable cause to know that fraud had been perpetrated upon the maker by the payee of the note, a jury would generally be justified in finding that he did know it. But it would not necessarily follow. Reasonable cause to know a fact is one thing, and actual knowledge of it is another. What convinces one man may not convince another. The point to be found is not whether the indorsee might have ascertained and could have known that the note he purchases was fraudulently obtained, but whether he in fact knew it, or acted in bad faith." *Kellogg* v. *Curtis*, 69 Maine, 212. See also *Wing* v. *Ford*, 89 Maine, 140. Fraud on the part of the payee and its knowledge by the indorsee are two distinct facts, and proof of the former must not be allowed to color the latter. Nor should natural sympathy for the defendant affect the result.

Our attention has been called by the defendant to two recent cases in New Hampshire where similar notes originally taken by the Partin Manufacturing Company were in litigation and the defendants prevailed.

The first was *Mechanic Bank* v. *Feeney*, 108 Atl., 295, decided June 28, 1919, in which a verdict was directed for the plaintiff and the court sustained exceptions. Two reasons for that conclusion are given in the opinion; first because the transaction as testified to by the cashier, with a discount of ten per cent, and a payment of $1450 in cash and a draft for the balance, $4,040 payable in one year, seemed to the court to be out of the ususal course of banking business and inconsistent with a purchase in good faith; and second because the cashier did not testify that when the discount was made he believed the paper to be free from infirmity.

In the case at bar we do not attach so great importance to the fact proved here that payment was made partly in cash, partly by certificates of deposit, and partly by credit on the bank books to protect against loss, and further in this case the president did testify positively to his belief that the paper was free from infirmity when taken.

The second New Hampshire case is *Security Trust Co.* v. *Porter,* 109 Atl., 46, decided January 6, 1920, in which, as before, a verdict was directed for the plaintiff and exceptions were again sustained.

In that case the court held that a jury might well draw the inference that the notes were held by the bank not as a bona fide owner but for collection only, and relied upon the following facts to substantiate it: First, the plaintiff's request when sending the notes to a local bank for collection to return them without protest if not paid; second, the bringing of a former suit on two of the notes in the name of the Partin Manufacturing Company; third, the amendment of the pending suit in the name of the bank on two of the notes so as to include the two upon which the Partin suit had previously been instituted and presumably abandoned. The case at bar is clearly distinguishable from that case. Not one of the determining factors exists here. These notes were sent to the local bank and were duly protested in the ordinary course of business. Only one suit was brought and that by the indorsee upon the two unpaid notes, the defendant having paid the others.

Each case of this nature must be decided upon its own peculiar facts. Upon the facts proven before us it is our conclusion that the ruling of the presiding Justice directing a verdict for the plaintiff was justified, because a verdict for the defendant although rendered by a jury would have been so lacking in substantial basis, either of fact or of proper inferences from proven facts, that it could not have been allowed to stand.

*Exceptions overruled.*