Grafton, }
Feb. 5, 1929. }

LAND FINANCE CORPORATION
*v.*
GRAFTON COUNTY ELECTRIC LIGHT & POWER CO.

*Fred A. Jones* and *George W. Pike,* for the plaintiff.

*Raymond Trainor* (of Vermont), *John F. Cronin* and *Paul Gilioli,* for the defendant.

MARBLE, J.    1.  The defendant's general manager testified that a representative of the Autocrat Sales & Distributing Corporation approached him at his office in Lebanon with a proposal relating to electric dishwashers; that the representative stated that the defendant would take no chances whatever; that all it would have to do would be to put a machine on the floor or in the window of its salesroom and furnish the corporation a list of its customers; that the corporation would do all the advertising and send a man to sell the machines; that the defendant would not be required to pay any money until one of the machines had been sold, and that if no sale was made within sixty days the machines could be returned at the expense of the corporation.

The witness also testified that, relying upon these representations, he permitted the corporation to forward several machines; that he placed one of them in the window as agreed, but that no one ever appeared to sell the machines and no advertising matter was ever furnished; that no machine was ever sold, and that he notified the corporation, when the first draft was presented, that it had not fulfilled its· agreement and that payment would not be made.  He further stated that the agent made false representations concerning the quality and construction of the machines.

There was also testimony that the corporation had dealt similarly with at least two other electrical concerns in surrounding localities.

The Autocrat Sales & Distributing Corporation was organized in 1925, and, so far as the record discloses, the only active official connected with it was one Ainsworth, its general manager and treasurer. Ainsworth had an office in New York, but closed the office and disappeared in the summer of 1925 when suit was brought against him.

On this evidence there can be no question but that the jury was fully justified in finding that the execution of the acceptances was procured by fraud. This being so, the burden was on the plaintiff to prove that it had acquired title to them in good faith. *Ensign* v. *Christiansen*, 79 N. H. 353; *Mechanics Sav. Bank* v. *Feeney*, 79 N. H. 267; *Hallock* v. *Young*, 72 N. H. 416, 419, and cases cited; P. L., c. 312, s. 59; 18 A. L. R. 18.

The plaintiff corporation at the time of the transactions in question was owned and controlled by one Leopold Blumberg of New York. Its business — the purchasing of commercial paper — was conducted in Blumberg's law office, and the only persons connected with the enterprise were Blumberg and his secretary. Blumberg testified that Ainsworth came to his office in April, 1925, and desired to obtain money on certain trade acceptances which his company had taken in payment for dishwashing machines. Among these acceptances were those in suit.

Blumberg inquired if the Autocrat corporation had ever done business with any other commercial financing company and was told that it had, that the Aetna Financial company had taken about sixty thousand dollars of its trade acceptances and accounts and was unwilling to take more. Blumberg did not consider the corporation's statement of assets amounting to only $3,000 a good showing, but agreed to buy the acceptances if the acceptors were good. He later satisfied himself that the defendant was financially responsible.

In fixing the rate of discount the possible difficulty of enforcing payment was taken into consideration. Only eighty per cent of the face value of the acceptances was advanced in the first instance, although this was subject to later adjustment on the basis of an interest charge of six per cent on the account current and a service charge of one twenty-fifth of one per cent per day in case no expenses of collection should be incurred. If there were such expenses the entire twenty per cent was to be retained if required.

Blumberg tried to obtain credit insurance. He frankly stated that he "would not have bought a single piece of paper" on the drawer's financial standing; that he had never heard of the Autocrat corporation when Ainsworth first approached him; that he did not then or later

learn whether its business was manufacturing or jobbing; that he had never entered Ainsworth's office and didn't care about him or his concern. Far from expressly stating that he did not believe that the object of the drawer in disposing of the accceptances "was to cut off defences" (*Mechanics Sav. Bank* v. *Feeney*, 79 N. H. 267, 269), he testified that he made no inquiries as to whether the corporation was doing business honestly or fraudulently and while he assumed that the people who did business with them knew what they were about before they made payment in acceptances, he and his company "were not interested in that at all."

Certainly the evidence on the issue of good faith was not "uniformly and convincingly in favor of the plaintiff" (*Hallock* v. *Young*, 72 N. H. 416, 421), and that issue was therefore for the jury. *Ensign* v. *Christiansen*, 79 N. H. 353, 355; *Security Nat. Bank* v. *Porter*, 79 N. H. 344; *Mechanics Sav. Bank* v. *Feeney*, 79 N. H. 267.

2. The plaintiff excepted to the testimony of the defendant's general manager relating to the alleged fraudulent representations of the drawer apparently on the ground that this evidence contradicted the notation printed on the acceptances that the obligation arose out of the purchase of goods from the drawer. Even if the testimony of the witness is to be construed as denying a purchase and sale in the strict sense of the term, it was nevertheless admissible. "The purpose of the evidence was to prove a fact which, if proved, established that the contract was void and never had any legal effect. This fact could be proved by any competent evidence, even if it contradicted the recitals of the writing." *Wheeler* v. *Stock Exchange*, 72 N. H. 315, 319.

"The evidence did not contradict the writing, in the sense in which that term is used in the exclusionary rule." *Stratton* v. *Stratton*, 82 N. H. 125, 126. See also *Lyman* v. *Kimball*, 82 N. H. 232, 233, and cases cited.

Although the other exceptions to the admission of evidence are very numerous they may fairly be grouped under a single head. All relate to fraudulent statements made by the Autocrat corporation to other persons.

One Harold O. Taylor testified that a representative of the Autocrat corporation came to his place of business in April, 1925, and that as a result of the interview he agreed to take the agency for the sale of the corporation's dishwashing machines, and signed acceptances similar to those signed by the defendant; that the agent made certain representations regarding the quality and construction of the machines, and said that they would be forwarded freight prepaid; that

the freight was not paid and the machines did not conform to the representations; that the agent stated that salesmen would be sent by the corporation to sell the machines, and that the acceptances would never be banked and need not be paid till the machines were sold; that the witness placed one of the machines on exhibition and furnished the corporation a list of his customers as he had agreed to do, but that no salesman ever came, and that the acceptances were forwarded to the bank for collection and suit finally instituted against him.

There was also evidence that the Autocrat corporation, in April, 1925, made substantially the same fraudulent statements and representations to one Arthur E. Sherwin of the Sherwin Electric company, Burlington, Vermont. See *Land Finance Corporation* v. *Company*, 101 Vt. 114.

Practically all of this evidence was excepted to as incompetent and immaterial. The present contention that it does not appear that the agent who procured the acceptances from Taylor and Sherwin was the same person who dealt with the defendant was not advanced at the trial. *Goddard* v. *Company*, 82 N. H. 225, 229; *St. Laurent* v. *Railway*, 77 N. H. 460, 463. But even if objection had been made on that specific ground the plaintiff would be in no better position. It was the conduct of the Autocrat corporation which was of importance, and there is no claim that the various transactions testified to were not consummated by agents of that corporation. Indeed, it is a fair inference from all the evidence that the corporation itself expressly authorized and directed the perpetration of the fraud.

So far as the broader question is concerned, the presiding justice instructed the jury that the evidence relative to transactions between the Autocrat corporation and other persons could be considered only on the question of fraudulent intent. As thus limited, the evidence was clearly admissible. *Creditors Nat. Clearing House* v. *Lamoureux*, 78 N. H. 604; *Hovey* v. *Grant*, 52 N. H. 569; *Perkins* v. *Prout*, 47 N. H. 387, 391; *Pomeroy* v. *Bailey*, 43 N. H. 118, 125; *Whittier* v. *Varney*, 10 N. H. 291, 294.

A special exception was taken to Taylor's testimony that the corporation agreed to pay the freight on the machines, since there was no claim that any such representation was made to the defendant. The vital element was the fraudulent conduct of the corporation, and it was not essential that such conduct in order to be admissible in evidence should correspond in every minute detail with the treatment accorded the defendant. This and other special exceptions

merely raised questions of remoteness for the decision of the presiding judge. *State* v. *Foster*, 80 N. H. 1, 4.

One of the dishwashing machines sent the witness Taylor was exhibited to the jury. This was unobjectionable, since there was testimony that it was identical with the machines sent the defendant. The sufficiency of the identification was for the trial court. *State* v. *Mannion*, 82 N. H. 518, 520, and cases cited.

3. During his argument to the jury counsel for the defendant said: "Not a fraud? We say it was a palpable fraud. They took these trade acceptances and got rid of them as quick as they could. It is the same good, old story, worked in the same good old way. Lightning rods have been sold that way; gold bricks —"

Whereupon counsel for the plaintiff interrupted, and the court endeavored to ascertain the exact statement which was deemed objectionable. On a strict interpretation of the record, it is doubtful if the plaintiff's exception covers the reference to lightning rods and gold bricks. But even if that reference is included, the argument was not improper. Counsel merely attempted to impress upon the jury the fact that here was another fraud perpetrated upon old and familiar lines. The evidence warranted that conclusion, and the expression of the inference as a positive assertion of fact coupled with appropriate illustrations did not constitute testimony. *State* v. *Davis*, ante, 435; *Maravas* v. *Assurance Corp.*, 82 N. H. 533, 538, and cases cited; *Berry* v. *Railway*, 79 N. H. 161; *Grossbard* v. *Railway*, 78 N. H. 496; *Hamlin* v. *Philbrook*, 78 N. H. 144, 146; *Kambour* v. *Railroad*, 77 N. H. 33, 52.

The same is true of the remarks: "He [Blumberg] doesn't know anything about the Autocrat Company excepting that he had a financial statement showing they were worth three thousand dollars. That is a statement that does not go very high," and "If they had attempted to put this paper through a bank in Boston or through a bank in New York, they knew that inquiries would have been made."

There was evidence to sustain the statement: "They [the plaintiff] dealt in the paper of the Sherwin Company in Burlington . . . That paper was sold to Blumberg for eighty dollars on the hundred."

The plaintiff's exceptions are overruled.

*Judgment on the verdict.*

All concurred.