SILVER DISCOUNT CORPORATION *v.* R. A. BLAIR.

October Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed November 7, 1933.

12

*Cebra Q. Graves* for the plaintiff.

*Edward H. Holden* for the defendant.

SLACK, J. The plaintiff seeks to recover on a trade acceptance drawn by the Allmall Sales Corporation, hereinafter called the Allmall Company, on the defendant and accepted by him, which acceptance was payable to the order of the drawer, and was indorsed by it to the plaintiff before maturity. The defendant filed an answer setting up, among other things, fraud on the part of the drawer in procuring the acceptance, and that plaintiff was not a holder in due course in that it did not take the acceptance in good faith. A trial was had by jury which resulted in a verdict and judgment for the defendant, and the case is here on plaintiff's exceptions.

At the close of all the evidence the plaintiff moved for a directed verdict on the grounds, in effect, that all the evidence showed that it was a holder in due course, and showed that the defendant negligently signed the acceptance in blank, and consequently could not avail himself of the drawer's fraud as a defense. The motion was denied, and plaintiff excepted.

■ To constitute one a holder in due course of a negotiable instrument, it must appear that he took the same in good faith and for value, and that at the time it was negotiated to him he did not have notice of any infirmity in the instrument or defect in the title of the person negotiating it. G. L. 2921. It is not necessary that he have actual notice of such infirmity or defect. If he has knowledge of such facts that his action in taking the instrument amounts to bad faith, he is not a holder in due course. G. L. 2925. And a negotiable instrument in the hands of one other than a holder in due course is subject to the same defenses as if it were nonnegotiable. G. L. 2927.

■■ When, as here, the instrument in issue is regular on its face and is shown to have been executed by the maker or acceptor, the holder is deemed *prima facie* to be a holder in due course. G. L. 2928; *Howard Nat. Bank* v. *Wilson,* 96 Vt. 438, 450, 120 Atl. 889. But, when the party sought· to be charged on such instrument produces evidence sufficient for the consideration of the jury tending to show fraud in its inception, which this defendant did, the holder has the burden of showing that he acquired the instrument in good faith. G. L. 2928; *Howard*

*Nat. Bank* v. *Wilson, supra; Land Finance Corp.* v. *Sherwin Elec. Co.,* 101 Vt. 114, 122, 141 Atl. 598.

Our first inquiry is whether the evidence on this issue was such that the court erred in denying plaintiff's motion.

Alexander Korn testified in substance that the plaintiff is a corporation doing commercial banking in New York City; that it buys notes, trade acceptances, and accounts receivable; that he is its assistant secretary; that about June 10, 1930, Fleischer and Neudleman, president and treasurer respectively of the Allmall Company, came to plaintiff's office in response to its advertisement which they saw in the paper; that he had never seen either of them before; that they told him that they were in the paint business, sold paint on the basis of ninety days trade acceptances; that they produced acceptances from fifteen different persons, including defendant, and asked whether plaintiff would be interested in purchasing them; that they furnished him at that time the names of the acceptors of those acceptances, showed him a letter from the bank through which each acceptance was payable certifying to the signature and financial standing of the acceptor, and furnished him with a written statement of the financial status of the Allmall Company as of June 6, 1930; that he immediately communicated with R. G. Dun & Company, with whom plaintiff was a subscriber, and was advised that the Allmall Company was in the paint business; that it was rated by that agency at three to five thousand dollars, good credit, that Dun & Company had investigated its business and found that it was being extended credit of two to three thousand dollars at regular terms, and that its commitments were always met promptly; that he then asked Dun & Company to send him a written report regarding the Allmall Company, which it did later; that he then looked up, through Dun & Company, the financial and moral standing of each acceptor, and the manufacturer that furnished the Allmall Company the paint which the latter sold, and communicated with such manufacturer by telephone, and found all those parties to be satisfactory; that he saw the bill of lading of the goods covered by each acceptance; that after receiving such information the plaintiff on June 11, 1930, purchased said acceptances, and two others, and paid Fleischer and Neudleman sixty-five per cent. of the total amount of same, and agreed to pay the remaining thirty-five per cent. "less any deductions for our

charges,'' when the acceptances were paid; that plaintiff always did that in transactions of this kind; that shortly thereafter plaintiff notified each acceptor, including defendant, that it held his acceptance, and that in every instance the validity of the acceptance was challenged; that thereupon he tried to find Fleischer and Neudleman, but failed to do so; that his last information regarding them was they were in a federal prison, and that he made the complaint that resulted in their being there.

On the foregoing evidence, which was undisputed, the plaintiff insists that its motion for a directed verdict should have been granted. But the record discloses certain circumstances that have a material bearing on the question of plaintiff's good faith. There was no evidence that plaintiff did not have actual knowledge of the fraud perpetrated in procuring this acceptance, or knowledge of such facts regarding its infirmity as to constitute bad faith on its part in taking it. The evidence is noticeably silent on this phase of the case, although it shows great diligence in the investigation of other matters. Korn testified in cross-examination: ''Q. Well did you make any inquiry of how they (the acceptances) were obtained from the several acceptors? A. Well I communicated with R. G. Dun & Company and I got a report on this concern (Allmall Company). This report gave me the information I wanted.'' While failure to inquire into the consideration is not in and of itself bad faith in a holder of negotiable paper who purchased it in the ordinary course of business, it may be evidence of bad faith sufficient to take the case to the jury. *Land Finance Corp.* v. *Sherwin Electric Co., supra,* at page 123, 141 Atl. 598. Then, too, the willingness of the Allmall Company to sell this batch of acceptances, which amounted in the aggregate to $4,533.49, and according to the financial statement furnished by it to the plaintiff constituted more than seventy-seven per cent. of its entire working capital, for a down payment of sixty five per cent., was sufficient to indicate to a reasonably prudent person that they were anxious to get rid of them. It may have been because they needed the money; it may have been for the reason which is now apparent. But the fact remains that so far as appears the plaintiff, with full knowledge of the situation, took no steps to ascertain the reason. The statement of the Allmall Company referred to shows that its only tangible assets

were an automobile, office furniture, and printed matter, valued at $1,441.00, and that its outstanding liabilities were $1,000.00. The balance of its assets, other than $810.00 in the bank, consisted of bills receivable valued at $1,007.02 and trade acceptances, including those sold plaintiff, valued at $5,002.54. The written report which plaintiff received from Dun & Company regarding the Allmall Company was equally suggestive of the character of that concern and of the business methods likely to be employed by it. It appears therefrom that its incorporators were Edward Horwin, Pauline Berman, and Cecil Stein, all of 150 Broadway, New York; that they owned one share of stock each; that the company's place of business was a small room, inexpensively furnished, on the second floor of a three-story building in Brooklyn, the ground floor of which was used as a restaurant and the third floor for residential purposes, and that its officers were outside most of the time soliciting orders.

In the circumstances, whether the plaintiff had knowledge of such facts that its action in taking this acceptance amounted to bad faith was clearly a question for the jury.

 It appeared that there were some unfilled blanks in the instrument that defendant gave the Allmall Company. It is urged that defendant was negligent in that respect, that such negligence enabled the Allmall Company to perpetrate a fraud upon him, and consequently that a verdict should have been ordered for plaintiff. This claim is predicated upon the theory, stated in both the motion and the brief, that "where one of two innocent parties must suffer, the one whose negligence contributed to the loss must bear it." The claim is untenable. It is immaterial how the fraud came to be committed, so far as the plaintiff is concerned. If one was committed and the plaintiff knew about it, or had knowledge of facts which tended to show that there was something wrong with the transaction, it was guilty of bad faith and must suffer the consequences. Its motion for a verdict was properly denied.

 The plaintiff relies upon certain exceptions saved to the failure of the court to charge as requested, but they are not sufficiently briefed to require consideration. The briefing is the same in each instance. It is merely stated, in effect, that the court did not charge as requested in a certain named particular to which plaintiff excepted, citing a case. No argument is advanced indicating wherein it is claimed that the court erred,

nor is it claimed, except by inference, that it did err. Simply citing a case in the manner done here adds nothing to the briefing.

This disposes of all questions properly raised.

*Judgment affirmed.*