Hillsborough,
May 27, 1940. } No. 3099.

## NATIONAL RADIATOR CORPORATION

*v.*

### GORDON HOLDEN & a.

*Maurice A. Broderick* (by brief and orally), for the plaintiff.

*Ivory C. Eaton* (by brief and orally), for the defendants.

PAGE, J. In July, 1934, the defendant Gordon Holden contracted with the Domestic Heating Company of Malden, Massachusetts, for the installation of a heating system in his dwelling in Nashua, the defendant Frances not being a party to the contract and having no title to the property. The Domestic Company guaranteed that the apparatus would heat various rooms in the house to designated temperatures when there was zero-weather outside. As will later appear, this guaranty was broken.

For some reason not appearing, the apparatus was installed by James Brothers (otherwise called James and Company), who, after the work was done on July 26, 1934, took from Gordon and his wife

an undated promissory note for $456, the unpaid balance of the contract-price. This note, later properly dated August 2, 1934, was negotiable in form and was made payable in twenty-four equal monthly instalments of $19 each. This is the note in suit. It bears the endorsements of James Brothers and of the plaintiff. The purpose of the latter will appear later.

At the time the note was delivered to James, the defendants also signed and delivered a certificate addressed to the plaintiff. This certificate stated that the "note represents the amount due by the undersigned for articles . . . which the aforesaid Dealer [James] has delivered and completely installed in our premises in a satisfactory manner, which note said dealer has arranged to negotiate to you [the plaintiff] for a valuable consideration, and I/we further certify that I/we have no counterclaim or defense thereto and agree to make said payments directly to you or your assigns." On the same paper James certified that the signatures of the defendants were genuine, that they were attached after completion of the contract, and that there were "no written or verbal agreements between the owner and the undersigned James in any way altering the unqualified agreement of the owners" as provided in the note. The only evidence is that the plaintiff believed these statements.

On August 4, 1934, James apparently endorsed the note to the plaintiff and authorized the plaintiff to pay for the material used in performing the contract to Bradley Frankum, Inc., a jobbing concern from whom James had purchased the material. On August 31, 1934, the plaintiff, first having made a "credit check-up" of the Holdens, completed the transfer by crediting to the jobbers the sum due them, and placed the note for collection with its agent, the C. I. T. Corporation, to which the plaintiff endorsed it.

The defendant Gordon admitted signing the certificate given with the note. He testified that James "insisted on my signing it. I asked them why I should sign it, and they said they couldn't get their pay for installing the furnace unless I signed it . . . I asked them why I should sign it without testing the heater, and they said they were installing the right kind. I said they appeared to be pretty good fellows and that I'd sign it, and the first chance I had to test it I'd see how it would work out, as I thought it would. I signed it because they told me they couldn't get their money unless I did. They said it was simply something to turn into the office so that they could get their money and that it [the certificate] wasn't a note."

It would seem that no misrepresentation regarding the certificate or its purpose or effect was made to the defendant. He knew that he was signing a statement that the contract had been completely performed in a satisfactory manner. He realized that he did not know without a test whether this was true, but he waived that test, impossible before cold weather came, because he had faith that the contract had been fully performed and wished to help good fellows to get their money. He must have known from the certificate that the money was to be furnished by the plaintiff's purchase of the note and that the plaintiff would rely upon his certificate in taking an assignment of the note and paying for it. There is no contrary evidence, and no other finding is permissible.

The defendant paid the first three monthly instalments on the note. Then a period of cold weather proved that the heating plant would not perform its guaranteed function. The defendant notified the then holder of the note, plaintiff's agent, the C. I. T. Corporation, of the breach of the guaranty, and gave similar notice to the original contractor. Since then he has made no further payment.

The defendant resists payment on the ground of failure of consideration. The plaintiff takes the position that a breach of warranty cannot, as a matter of law, amount to a failure of consideration, since the defendant still owns and possesses the heating plant. The point need not be decided.

The crucial issue submitted to the jury was whether the plaintiff "had or should by the exercise of ordinary prudence have had notice of this contract and the warranty therein," or "should have . . . inquired into the contract and the conditions of the contract in question," or "whether its failure to make inquiry further than what it did make constitutes a lack of good faith." If the jury found a breach of warranty and a failure by the plaintiff to exercise prudence in not making other inquiry than as to the defendant's credit, they were instructed to find that the plaintiff was not a holder in due course and to return a verdict for the defendant. The defendant made no objection to the instructions, which became the law of the trial as far as he was concerned.

The relevant issue was the plaintiff's good faith. *Hallock* v. *Young*, 72 N. H. 416. There was no evidence to rebut the presumption of good faith. While there was evidence that the plaintiff knew of the existence of a contract and inquiry into its precise terms would have discovered the existence of a clause of warranty, the defendant's statement that he had no counterclaim or defence left the plaintiff

in ignorance of any breach of the contract or defence to the note or any infirmity therein. If it might be found that the defendant verbally reserved, as to the contractor, a right to sue for any breach of the warranty that might later appear, he made no such reservation in the certificate and appears to have made none otherwise with respect to the plaintiff. This failure is significant in view of the defendant's plain knowledge that he was making a certificate on which the plaintiff would rely in advancing money or credit. It being clear that the defendant understood the transaction in that precise light, and there being no countervailing evidence that the plaintiff did not rely on his assurance, it must be found that the plaintiff acted in complete good faith.

The defendant seeks to rely upon *Hallock* v. *Young*, 72 N. H. 416; *Mechanics &c. Bank* v. *Feeney*, 79 N. H. 267; *Security &c. Bank* v. *Porter*, 79 N. H. 344; *Ensign* v. *Christiansen*, 79 N. H. 353; and *Land &c. Corporation* v. *Company*, 83 N. H. 518. In each of those cases there was some special feature casting such grave suspicion on the holder that a finding of lack of good faith was warranted. In this case it is not contended, for example, that the plaintiff paid less than full value (as in the *Feeney* case, *supra*), or that there was any feature charging the plaintiff other than failure to inquire further than it did. In none of the cases relied on did the holder, as here, in substance inquire of the party primarily liable whether he had a defence. The duty to establish good faith by inquiry has limitations. "To hold that a purchaser of negotiable paper is exposed to the charge of bad faith merely because he does not ask all parties to it if they have any defence, would impose a restriction upon the facilities of commerce which the general law of negotiable instruments seeks to promote." *Sonabend* v. *Charron*, 86 N. H. 386, 388, where the holder inquired of a reputable payee doing a legitimate business, but failed to question the maker. Here the plaintiff had assurances that there was no defence from both maker and payee.

Upon the record before us, there was no issue to present to the jury, and the plaintiff's motion for a directed verdict should have been granted. Other exceptions do not require consideration.

*Judgment for the plaintiff.*

All concurred.